BIG BRUSHY COAL & COKE CO. v. WILLIAMS.

(Circuit Court of Appeals, Sixth Circuit. January 24, 1910).

No. 1,972.

1. TRIAL (§ 420*)—MOTION TO DIRECT VERDICT—EXCEPTION—WAIVER.

An exception to the denial of defendant's motion to direct a verdict in its favor at the close of plaintiff's evidence was waived by defendant's introduction of evidence in its own behalf.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 983; Dec. Dig. § 420.*]

2. TRIAL (§ 139*)—MOTION TO DIRECT VERDICT—WEIGHT OF EVIDENCE.

It is not the province of a court to weigh the evidence, when considering a motion to direct a verdict at the close of all the testimony ; and that motion must be overruled when the testimony offered by plaintiff, if believed, supports the petition.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341 ; Dec. Dig. § 139.*]

3. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—MINES—NEGLIGENCE.

In an action for injuries to a miner by the fall of material from the roof, evidence held to require submission to the jury of defendant's negligence in permitting plaintiff to work in the room with knowledge that the roof was dangerous.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1026 ; Dec. Dig. § 286.*]

4. NEW TRIAL (§ 157*)—EVIDENCE—WEIGHT.

It is the duty of a trial judge, in considering a motion for a new trial, to weigh the evidence.

[Ed. Note.—For other cases, see New Trial, Dec. Dig. § 157.*]

5. APPEAL AND ERROR (§ 977*)—MOTION FOR NEW TRIAL—REVIEW.

The action of a trial court on a motion for a new trial is a matter of discretion, and not reviewable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3860–3865 ; Dec. Dig. § 977.*]

6. APPEAL AND ERROR (§ 263*)—REVIEW—INSTRUCTIONS—NECESSITY OF EXCEPTIONS.

Where no exception was taken to the charge, and a special instruction was given at defendant's request, the instructions cannot be reviewed on defendant's writ of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1532 ; Dec. Dig. § 263.*]

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

Action by William Williams against the Big Brushy Coal & Coke Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This suit was brought in the circuit court of Morgan county, Tenn., and subsequently removed to the court below on the ground of diversity of citizenship. Williams commenced the action to recover $10,000, and alleged in the declaration that the coal company owned and was operating a coal mine in Morgan county, with a tram road running into the mine ; that the company employed him as a miner ; that his duty was to dig and load coal into cars, and for that purpose to occupy and take care of his room ; that while working in the mine he was permanently injured by the falling of rock and slate. Various acts of negligence are alleged against the company, which may be summarized thus:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Failure of the company to give Williams a safe place in which to work, or to furnish him with sufficient timbers to prop, or itself duly to prop, or to inspect, or to give instructions, or to warn him of the peculiarly dangerous character of his work, owing to the presence of "many horse backs, bell splits, and hill seams" in his room, including its roof, of all of which Williams was ignorant and the company had knowledge. The company's plea was one of not guilty.

The trial took place before the court and a jury, and resulted in a verdict in favor of Williams for $7,000. Two motions were made by the company to direct a verdict in its favor, one at the close of Williams' evidence, and the other at the close of all the evidence. Both were overruled. Certain testimony was received against exception of the company, which will be noticed in the opinion. Motion for new trial was overruled, and judgment entered. The case is pending here on proceedings in error.

R. B. Cassell, for plaintiff in error.

Forest W. Andrews, for defendant in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). The errors assigned are for the most part involved in the issues of fact, which were stated and submitted by the court in its charge to the jury, and are answered by the verdict and judgment. No exception was taken to the charge. The chief complaint is that there was no evidence upon which to found the verdict or judgment. It is stated in the charge:

"The controversy seems to be as to whether the rock that fell upon the miner was exposed by the plaintiff digging and removing the coal under it, and which supported the rock, or whether the rock had been exposed by those who had mined in this same room prior to the plaintiff's operations there."

There is no conflict of evidence concerning the identity of the room of the mine in which Williams was working at the time of his injury, or the fact that the rock fell from the roof of the room. There is conflict touching the exact portion of the roof from which the rock fell; some of the witnesses stating that it broke at the face of the coal, and some that it broke six or eight inches away from the face, and nearly all saying that it extended thence three to four feet. At the time the rock fell, Williams was either stepping into or walking toward the end of the track on which cars for transporting coal in the mine were operated, and must have been struck by the outer portion of the rock. It is reasonably clear that the coal formerly sustaining the rock had been removed, and the rock exposed, before Williams began to work in the room. There is conflict, however, as to whether he caused the rock to fall by certain work he was doing in the face of the coal, partially within lines corresponding to the width of the falling rock and below the roof of the room. The conflict involves both the nature and extent of this work. It was stated that he prepared a place for a shot and that he fired it; but both Williams and his son, who was working with him, denied that any shot was fired. It is sufficient to say, without going into details, that testimony was given on both sides of the question.

Several other issues of fact grew out of the controversy just commented on. One was whether Williams had been given his choice of any one of three rooms in which to mine coal, and had promised to re-

port his selection, and that he had selected room 28 without giving notice. . But the testimony on this point resulted in an assertion of the company's mine foreman and a denial of Williams. Still another issue of fact arose out of a claim of the company that the room was unsafe and that Williams was employed to make it safe. This kind of service was called "company work," and was paid for by the day, while mining coal was paid for by the ton mined. The company's assistant foreman testified that, about two days before Williams began work in room 28, he told Williams that the room was in bad shape, and that some slate in it would have to be taken down before the room would be safe to work in. (In the testimony, and in the charge, the material in the roof of the room was sometimes called rock, and at other times slate.) This foreman further testified in substance that he told Williams to remove the slate and fix the place for work, and that Williams said he would. But Williams contradicted this testimony.

Further issues of fact were made concerning alleged failure of the company to cause the room to be inspected and put in a safe condition, and also failure of Williams himself to inspect it and acquaint himself with its condition. It was quite consistent for the company to claim that it had the room inspected, and so learned of its condition; for, as just shown, it claimed to have engaged Williams to make it safe. But it is not easy to reconcile the two positions taken by the company: First, that Williams was given the choice of three rooms, including room 28, in which to mine coal; and, next, that Williams was employed to put that room in safe condition for mining coal. To take the first position was to say that the company did not know that the room was in a dangerous condition; to take the second was to assert that it did.

But, apart from this seeming inconsistency, Williams testified that no officer of the company inspected the room while he was working in it. The mine foreman, who said that he gave Williams the choice of the three rooms, and his assistant, who stated that he had employed Williams to make the room safe, testified that some days before Williams began to work in the room they each discovered loose top in it. One man, however, who worked in the room shortly before Williams worked there, testified that the assistant had told him there was no danger in the room, and accused him of being afraid of it. Williams testified that, when he began his work in the room, he tested the top with a pick, and called for props, and placed them where he thought necessary for his protection. He also testified, in substance, that he had never been in the room before and had been given no warning; also that there was nothing to put him on his guard, further than he discovered and attempted to provide against. This is sufficient to show that there was also conflict in the testimony touching the last-mentioned issues of fact.

But in considering the foregoing issues of fact, and the conflict of testimony concerning them, we must not lose sight of the question: What was Williams' real employment? He testified in effect that he was employed to mine coal in this room; the mine foreman telling him to work in the room in question, and the assistant pointing it out. The testimony is reasonably clear that Williams did in fact mine coal in

that room for at least three days before his injury, and that he was paid for the work by the ton. It is true that, for purposes of his own mining, he did such propping as is usual in a place of ordinary safety; but he was not in fact occupied in what was known as "company work" for making a dangerous place safe. Could the company close its eyes to what its employé was thus in truth doing? Can the company justly complain against a finding that it was not in the exercise of ordinary care in thus engaging and permitting a person to mine coal, where its mine foreman and his assistant testified that at that very time they knew there was loose top in the room? If the company's testimony is to be believed, it should not have tolerated mining in this room until it was made safe. If Williams' testimony is to be believed, the danger claimed to have been known by the company's officers was not apparent to the average miner. But it is not necessary to pursue the subject further.

Turning, now, to the assignments of error, we think they must be overruled. The company waived the exception taken to the overruling of its motion to direct a verdict in its favor at the close of the evidence offered by plaintiff. Leonard Martin Construction Co. v. Highbarger (decided by this court November 2, 1909) 175 Fed. 340, 342. It was not the province of the court below to weigh the evidence, when considering the motion to direct at the close of all the testimony. The motion must be overruled, where the testimony presented by the plaintiff, if believed by the jury, will support the petition. Mt. Adams & E. P. Inclined Ry. Co. v. Lowery, 74 Fed. 463, 477, 20 C. C. A. 596; Central Union Depot & Ry. Co. v. Mansfield, 169 Fed. 614, 95 C. C. A. 142; Norfolk & W. Ry. Co. v. Hazelrigg, 170 Fed. 551, 95 C. C. A. 637; L. S. & M. S. Ry. Co. v. J. Eder, Jr. (decided December 7, 1909) 174 Fed. 944; Noble v. C. Crane & Co., 169 Fed. 55, 94 C. C. A. 423; Van Stone v. Stilwell & Bierce Mfg. Co., 142 U. S. 128, 135, 12 Sup. Ct. 181, 35 L. Ed. 961. In our opinion there was such testimony. The weight of evidence and the extent and effect of contradiction present questions for the jury. Crumpton v. United States, 138 U. S. 361, 363, 11 Sup. Ct. 355, 34 L. Ed. 958.

When, however, the trial judge came to consider the motion for a new trial, he was required to weigh the evidence. It was said by this court in regard to the duty of the trial judge in passing upon a motion for a new trial, the present Mr. Justice Lurton announcing the opinion, in Mt. Adams & E. P. Inclined Ry. Co. v. Lowery, supra (74 Fed. 477, 20 C. C. A. 609):

"In passing upon such motions he is necessarily required to weigh the evidence, that he may determine whether the verdict was one which might reasonably have been reached."

In the opinion of the court below overruling the motion for a new trial, this appears:

"I have gone carefully over the grounds assigned upon which the defendant bases its motion for a new trial, and am of the opinion that the motion must be disallowed. * * * The questions of the negligence of the defendant and of the contributory negligence of the plaintiff were submitted to the jury, and they found for the plaintiff. I think the proof warrants this finding by the

jury. As to the question as to the amount of the verdict, I am of the opinion that it was reasonable, in view of the severe injuries that the proof discloses were inflicted upon the plaintiff."

The case therefore falls within the settled general rule that the granting or refusing of a new trial is a matter of discretion, and not subject to review. In Louisville & N. R. Co. v. Summers, 125 Fed. 719, 723, 60 C. C. A. 487, 491, Judge Severens said:

"It has been often said by this court that it will not review the action of the lower court in its disposition of a motion for a new trial, or other matters addressed to its discretion."

See, also, L. S. & M. S. Ry. Co. v. J. Eder, Jr., supra; Illinois Cent. R. Co. v. Coughlin, 145 Fed. 37, 75 C. C. A. 262; Railway Company v. Heck, 102 U. S. 120, 26 L. Ed. 58; Wilson v. Everett, 139 U. S. 616, 621, 11 Sup. Ct. 664, 35 L. Ed. 286; Van Stone v. Stilwell & Bierce Mfg. Co., supra, 142 U. S. 134, 12 Sup. Ct. 181, 35 L. Ed. 961.

The assignment respecting admission of testimony in regard to the duty to place props in position for mining purposes does not, in our view of the testimony relating to the previous exposure of the rock and the apparent knowledge of the company touching the condition of the roof of the room, present any question of prejudicial error.

We have not found it necessary to consider the statute of Tennessee providing for the regulation and inspection of mines. We do not think its provisions were involved or applied, at least in any prejudicial sense. Nor is it important to consider the decisions cited and relied on so confidently by learned counsel for the coal company. We think the law applicable to the trial of the cause is to be found in the clear and impartial charge of the learned trial court. No exception was taken to it, as before stated, and the only special instruction asked by the company was given. The law, then, as stated in the charge and the special instruction, is not now open to review. Railway Company v. Heck, supra.

The judgment must be affirmed, with costs.