ROBINSON et al. v. VAN HOOSER.

(Circuit Court of Appeals, Sixth Circuit.    May 7, 1912.)

No. 2,207.

1. CONSPIRACY (§ 1*)—ACTIONS—ISSUES AND PROOF.

In an action for conspiracy, it is necessary not only to prove a combination and united action on the part of defendants but also to allege and prove damage.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 1–5; Dec. Dig. § 1.*]

2. CONSPIRACY (§ 18*)—ACTIONS—PLEADING.

The petition in an action for conspiracy construed, and held to charge a continuing conspiracy, and to entitle plaintiff to prove overt acts committed by defendants at different times.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 18–24; Dec. Dig. § 18.*]

3. TRIAL (§ 83*)—RECEPTION OF EVIDENCE—SUFFICIENCY OF OBJECTIONS.

Objections to the admission of evidence must state the grounds of objection to be effective.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 193–210; Dec. Dig. § 83.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CONSPIRACY (§ 19*)—EVIDENCE—RELEVANCY—CHARACTER EVIDENCE.

In a civil action to recover damages for conspiracy, evidence of the good character of defendants is irrelevant.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 25, 26; Dec. Dig. § 19.*]

5. COURTS (§ 359*)—EXEMPLARY DAMAGES—ACTION FOR CONSPIRACY.

An instruction permitting the allowance of punitive damages in an action for conspiracy in a federal court *held* not erroneous.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 939–949; Dec. Dig. § 359.*]

6. TRIAL (§ 139*)—DIRECTION OF VERDICT—GROUNDS.

A motion by defendant for a directed verdict must be overruled where plaintiff's evidence is material and if uncontradicted and believed would justify a verdict: and in considering the motion it is of no importance how much such evidence is contradicted by defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

7. APPEAL AND ERROR (§§ 263, 259*) — EXCEPTIONS — NECESSITY — REMARKS OF COURT.

An appellate court cannot review an instruction or remark made by the court to the jury to which no exception was taken.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1523, 1525–1532; Dec. Dig. §§ 263, 259.*]

8. APPEAL AND ERROR (§ 110*)—REVIEW—MOTION FOR NEW TRIAL.

A ruling on a motion for new trial is not reviewable in the federal courts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 740–748; Dec. Dig. § 110.*]

In Error to the Circuit Court of the United States for the Western District of Kentucky.

Action at law by J. F. Van Hooser against A. A. Robinson and others. Judgment for plaintiff, and defendants bring error. Affirmed.

This is a proceeding to reverse a judgment of $2,500 recovered by defendant in error (hereinafter called plaintiff) against plaintiffs in error (19 in number, and hereinafter called defendants). Plaintiff was the owner of a farm of 100 acres in Christian county, Ky., on which he resided with his family for over 25 years. In June, 1909, he removed with his family to Tennessee. Among the products of the farm was that of tobacco known as dark leaf tobacco, which is grown in a limited area consisting of Christian, Trigg, and Todd counties of Kentucky, and some adjacent counties of Tennessee. Plaintiff alleged, in substance, in his petition that certain societies composed of large numbers of persons engaged in raising and handling dark tobacco were formed and known by the names of "Farmers' Union or Equity Societies," and popularly called "Night Riders"; that their object was to create a monopoly in and enhance the price of tobacco by procuring the active co-operation and support of purchasers, handlers, and dealers therein; that such co-operation was also brought about by compelling persons through fraud and unlawful force to join the societies, and as to such as failed or refused to join and actively co-operate, resort was had to assaulting and killing them, and committing trespasses upon and destroying their property; that the persons so engaged had places of meeting, were bound together by pledges and oaths, and used secret signs and passwords to make themselves known to one another; that the defendants (21 originally, but 2 were dismissed) and others in his neighborhood joined the association, and plaintiff was solicited to join, and pool or pledge his tobacco and co-operate with them in carrying out purposes and committing acts such as stated; that defendants and others conspired and confederated together and organized a secret criminal society which was.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

sometimes called the "Farmers' Union," sometimes the "Silent Brigade," and sometimes the "Night Riders"—establishing lodges in Christian county, electing officers with titles of "General," "Colonel," and "Captain"—and upon initiation into such lodges or societies each member was bound by and took an oath promising in the presence of God that he would never reveal any of the secrets, signs, or passwords of the order, or any of the directions of the society to others than members thereof, and that he would obey all orders and every summons coming therefrom; that the defendants also unlawfully conspired, combined, and confederated together for the purpose of committing trespasses upon plaintiff's land and of assaulting him and putting him in fear and terrifying him, threatening to kill him and destroy his property, and of so compelling him to join the societies and pool his tobacco; that in December, 1908 (which time subsequently appeared by the evidence to be February 9, 1909), pursuant to this unlawful combination and conspiracy, defendants went to plaintiff's home armed with guns and other weapons and assaulted him, and took him into custody and compelled him to go into the woods and take the oath before mentioned; that he did not in fact co-operate with them, and, on the contrary, joined a Law and Order League at the city of Hopkinsville, which had for its object the preservation of the public peace and the enforcement of the laws; that, when his membership in the Law and Order League became known to defendants, they on divers occasions in 1909, including June of that year, pursuant to and in furtherance of said criminal combination and conspiracy, went to his home, and in a threatening, violent and hostile manner, with force and arms, maliciously assaulted him and his minor son and terrified him and his wife and children, and so forced him to leave his farm and home and flee for safety; and that he suffered great distress and mental anguish and humiliation, to his damage in the sum of $30,000.

A motion was made by defendants to strike from the petition the allegation that he suffered great distress and mental anguish and humiliation, and also to make the petition definite with reference to his alleged pecuniary loss. The motion was overruled touching the former but granted as to the latter; and thereupon an amendment was filed with a bill of particulars fixing his pecuniary losses at $3,125. He there alleged in effect that on or about June 22, 1909, by reason of the conduct of defendants, pursuant to the conspiracy entered into by them as set out in his petition, he suffered damages, etc., as stated in the petition.

In the answer the defendants traversed the allegations of the petition and amendment, but averred that in Christian county there were two organizations known respectively as the "American Society of Equity" and the "Dark Tobacco Growers' Association," stating, however, that those societies or any other existing in that county or any of the other counties named in the petition had for their object the creation of a monopoly in the raising, handling, or selling of tobacco, or the compelling of persons to join any of the societies, etc.

R. A. Miller (Charles S. Walker and W. T. Fowler, on the brief), for plaintiffs in error.

G. W. Jolly and B. G. Adcock (W. L. Krone, on the brief), for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). [1] It is contended that material errors occurred at the trial, through misconception of the nature of the action. It is said that the court in effect instructed the jury that the gist of the action is the conspiracy, instead of the damage sustained by reason of it. But the charge does not admit of the interpretation that it was necessary to prove the conspiracy only. The resulting damages alleged were as-

sociated with the action and the trial throughout. The court on mo-
tion of defendants required plaintiff to amend his petition by making
his claim for damages definite and filing a bill of particulars; and in
the charge compensatory damages in respect of loss on farm, crops,
and stock are considered and explained in connection with the subject
of conspiracy; and the subject of punitive damages is also considered.
The charge is, therefore, not open to the objection, so often con-
sidered by the courts and text-writers, that the plaintiff might recover
upon averment and proof simply of a conspiracy. It was not im-
portant that the trial court should either define the suit by name, or
instruct the jury as to any particular order in which it should consider
the evidence touching the damage and the conspiracy; nor was it of
practical consequence which subject required the greater attention, so
long as both were clearly explained. For example, whether the suit
be called an action upon the case in the nature of a conspiracy against
defendants for combining to injure plaintiff in his person and prop-
erty (Laverty v. Vanarsdale, 65 Pa. 507, 509) or an action of tort for
a conspiracy so to injure him in person and property (Emmons v. Al-
vord, 177 Mass. 466, 468, 59 N. E. 126), cannot change the nature of
the action or the kind or degree of proof required of the plaintiff.
Since to hold defendants liable in actions like this it is necessary to
prove a combination and united action on their part, the conspiracy
averments afford a convenient means of alleging such combination
and action, but this does not dispense with the necessity for averment
and proof of damage, and we do not understand the trial court to
have said so. Boston v. Simmons, 150 Mass. 461, 463, 23 N. E. 210, 6
L. R. A. 629, 15 Am. St. Rep. 230; Hundley v. Louisville & Nash-
ville R. R. Co., 105 Ky. 162, 168, 48 S. W. 429, 63 L. R. A. 289,
88 Am. St. Rep. 298; Hutchins v. Hutchins, 7 Hill (N. Y.) 105, 107,
109; Martens v. Reilly, 109 Wis. 464, 473, 84 N. W. 840; Adler v.
Fenton, 24 How. 407, 410, 16 L. Ed. 696; Place v. Minster, 65 N. Y.
89, 95.

[2] Another error assigned grew out of what was called in the
charge a "secondary or subsidiary conspiracy," which it is said was
not alleged. This complaint is based on certain testimony of plaintiff
concerning a notice fastened to a thorn switch and placed on the porch
of his home on the night of June 17, 1909, by two persons, one of
whom was recognized and is a defendant. The notice was addressed
to plaintiff's son and it charged him with "talking too much to suit us,"
stating "you have got to leave this country or be killed. * * *
We will give you until Monday morning to leave. * * * But
mind and don't forget to leave by Monday morning. [Signed]
Night Riders." In the opinion denying the motion for a new trial,
the learned trial judge states that "for want of a better name" he
spoke of what led up to the occurrence when the thorn switch was
placed on plaintiff's premises "as a sort of subsidiary or secondary
conspiracy." We are disposed to hold that the notice and testimony
concerning it were admissible under the pleadings. It seems to us that
the conspiracy alleged was continuous. As pointed out in the state-
ment, it is, in substance, alleged in the original petition that, after it

became known that plaintiff had become a member of the Law and Order League, defendants on divers occasions, among which the month of June (1909) is named, pursuant to and in furtherance of the combination, conspiracy, and confederacy "hereinbefore described," went to plaintiff's home and threatened him and his wife and children, etc., and again in the amendment to the petition it is averred that on or about June 22, 1909, plaintiff was by reason of the conduct of defendants, "pursuant to the conspiracy entered into by them as therein set forth (i. e., the petition), compelled to abandon his said farm," etc. Furthermore, the defendants cannot rightfully complain of the charge concerning the so-called subsidiary conspiracy, any more than they can of the charge regarding the acts of defendants which resulted in forcibly taking plaintiff from his home into the woods and compelling him to take the oath set out in the statement; for the court distinctly placed upon plaintiff the burden of proving that the defendants did in truth conspire to commit the acts and injuries respecting the one as well as the other.

It is urged that such societies as those mentioned in the pleadings are lawful bodies under statutes and decisions of the commonwealth of Kentucky when their object is not to raise or lower prices of articles above or below their actual market value under normal conditions, and that such a combination cannot be a conspiracy for an unlawful purpose. The averment is that one of the objects of the societies complained of was to create a monopoly in the raising, handling, and sale of the tobacco and to enhance its price. Apart from this, however, the argument fails to observe the true relation and effect of the unlawful means alleged and proofs adduced as to the manner of forcing men to join the societies and yield obedience to their commands. Can it be that men shall join and carry out the behests of such societies however lawful they may be in form and declared purpose, or suffer damages to their property and even flee for their lives? This must be the test of the argument, no matter whether the allegations and proofs be believed or not.

[3] Errors are assigned respecting certain testimony that was received during the trial. Wells, a son-in-law of plaintiff, was permitted to testify that after February 9, 1909, he was initiated into the Night Rider organization by one of the defendants who administered to him the Night Rider oath in Robinson's barn; again, Wells was permitted to testify that he heard another defendant say in the presence of others: "Of course, we are guilty of the crime of night-riding, but we are going to deny it." Wells was also allowed to state that he heard some of the defendants say that "they have fellows here from Christian county and they were going to stock the jury." He was further permitted to testify, in substance, that the reason he joined the night riders was because plaintiff had told him that he had been delegated to get him into the lodge and that he (plaintiff) had to do so or be killed. It is enough to say of all this testimony that the objections indicate no grounds upon which they were made, and they cannot be considered for that reason. Pennsylvania Co. v. Whitney, 169 Fed. 572, 575, 95 C. C. A. 70 (C. C. A. 6th Cir.); Mitchell v.

Marker, 62 Fed. 139, 10 C. C. A. 306, 25 L. R. A. 33 (C. C. A. 6th Cir.); Baltimore & O. R. Co. v. Hellenthal, 88 Fed. 116, 119, 31 C. C. A. 414 (C. C. A. 6th Cir.); North Chicago St. R. v. St. John, 85 Fed. 806, 29 C. C. A. 634 (C. C. A. 7th Cir.).

[4] Error is assigned to the ruling out of character evidence. Learned counsel very frankly admit that they "are in doubt as to its competency." Judge Evans, who presided at the trial, delivered a forceful opinion in support of his ruling on this subject. After citing Connecticut Life Insurance Company v. Union Trust Co., 112 U. S. 254-255, 5 Sup. Ct. 119, 28 L. Ed. 708, and Nashua Savings Bank v. Anglo-American Co., 189 U. S. 228, 23 Sup. Ct. 517, 47 L. Ed. 782, to show that the federal courts are as to evidence bound by the rules prevailing in the states, he relied on the following decisions of the Court of Appeals of Kentucky: Givens v. Bradley, 3 Bibb, 192, 6 Am. Dec. 646; Evans v. Evans, 93 Ky. 510, 518, 20 S. W. 605; Mattingly v. Shortell, 120 Ky. 57, 58, 85 S. W. 215, 8 Ann. Cas. 1134; Morris v. Hazelwood, 1 Bush, 210. The conclusion reached by the court is in accordance with the general rule as to evidence of character offered in civil actions, and we see no reason for departing from it in this case. Morgan v. Barnhill, 118 Fed. 24, 28, 55 C. C. A. 1 (C. C. A. 5th Cir.); Quinalty v. Temple, 176 Fed. 67, 69, 99 C. C. A. 375, 27 L. R. A. (N. S.) 1114 (C. C. A. 5th Cir.); Fahey v. Crotty, 63 Mich. 383, 388, 29 N. W. 876, 6 Am. St. Rep. 305; Stone v. Hawkeye Ins. Co., 68 Iowa, 737, 743, 28 N. W. 47, 56 Am. St. Rep. 870; Porter v. Whitlock, 142 Iowa, 66, 70, 120 N. W. 649; Thayer v. Boyle, 30 Me. 475, 480; Gebhart v. Burkett, 57 Ind. 378, 380, 26 Am. Rep. 61; Lamagdelaine v. Tremblay, 162 Mass. 339, 341, 39 N. E. 38; Black v. Epstein, 221 Mo. 286, 305, 120 S. W. 754.

[5] Another assignment of error is based upon a portion of the charge in which the jury was instructed that it was at liberty to add to compensatory damages such punitive damages as it thought the evidence warranted. If the allegations of the original petition and the amendment were substantially proved, it is hard to see why the rule in this regard was either improperly stated or applied. Nothing is said on the subject in the original brief for defendants; and the only effort made in this regard in the reply brief is to show that the exception and error were sufficiently taken and assigned. The doctrine of punitive or exemplary damages prevails in Kentucky. Chiles v. Drake, 2 Metc. (Ky.) 146, 153, 74 Am. Dec. 406; Slater v. Sherman, 5 Bush (Ky.) 206, 211; Jennings v. Maddox, 8 B. Mon. (Ky.) 430, 432; Doerhoefer v. Shewmaker, 97 S. W. 7, 29 Ky. Law Rep. 1193, 1197. The same doctrine is sanctioned both by the Supreme Court and this court. Scott v. Donald, 165 U. S. 58, 78, 82, 17 Sup. Ct. 265, 41 L. Ed. 632; Barry v. Edmunds, 116 U. S. 550, 564, 6 Sup. Ct. 501, 29 L. Ed. 729; Cowen v. Winters, 96 Fed. 929, 933, 37 C. C. A. 628 (C. C. A. 6th Cir.).

[6] It is insisted that the court erred in overruling defendants' motion for a directed verdict made at the conclusion of all the evidence. The motion was properly denied. It was not the province of the court to

weigh the evidence. Such a motion must be overruled where plaintiff's evidence is material, and, if uncontradicted and believed, would justify a verdict; and in considering the motion it is of no importance how much such evidence is contradicted by defendant. This is true even where plaintiff's own testimony is of itself in some measure contradictory. The present Mr. Justice Lurton said in Rochford v. Pennsylvania Co., 174 Fed. 81, 84, 98 C. C. A. 105, 108 (C. C. A. 6th Cir.):

"If the plaintiff has produced material evidence, sufficient, if believed and uncontradicted, to warrant a verdict, no amount of contradictory evidence will authorize the trial judge to take the question of its effect and weight away from the jury."

See, also, Erie R. Co. v. Rooney, 186 Fed. 16, 19, 108 C. C. A. 118 (C. C. A. 6th Cir.); Big Brushy Coal & Coke Co. v. Williams, 176 Fed. 529, 532, 99 C. C. A. 102 (C. C. A. 6th Cir.), and cases there cited.

Furthermore, the general charge distinctly cast the burden of weighing the evidence upon the jury exclusively. The learned trial judge studiously refrained from expressing an opinion, in fact disclaimed having any, as to the tendency or effect of the evidence. He defined the issues of fact with clearness and also arrayed and classified the witnesses and evidence on particular issues, so as to direct the jury's attention to the conflict of testimony in specific instances; as, for example, where the testimony of plaintiff as to the oath scene in the woods was disputed by all the defendants.

We may say here that in the argument stress was laid upon this feature of the testimony. It was claimed that all the defendants had not been shown to have taken part in the unlawful acts complained of; and as an instance that plaintiff admitted that at least two men—"two other fellows"—came in and received the oath after it had been administered to him. But the natural inference to be drawn from this portion of plaintiff's testimony is, we think, that the "other fellows" were others than defendants. If defendants thought the testimony susceptible of a different construction, they should have made it clear by further examination.

The testimony took a wide range, and is replete with circumstantial features, which were peculiarly subjects for the consideration of a jury. One of these features was that during the troubles out of which this case grew a patrol was maintained in the neighborhood of plaintiff's home at the expense of the county; and plaintiff was, under appointment of the county judge, a captain of the patrol, and his son-in-law, Wells, a patrolman. Another feature arose from testimony to the effect that plaintiff was subject to "spells," and was accustomed to imagine causes of fright that did not exist. Since motive and intent enter so vitally into a question of conspiracy, the consensus of judgment of a jury as to circumstances like these, in connection with the acts charged against defendants, is entitled to serious consideration. Place v. Minster, supra, 65 N. Y. page 95.

[7] Defendants complain of a remark made by the court to the jury, after it had announced that it could not agree. It was an inquiry whether an agreement could be reached as to any of the de-

fendants and a statement that it was almost a necessity that the jury should reach a verdict if it could. The court had rightly instructed the jury that it could find against less than all of the defendants, if the testimony did not justify a finding against all of them. Although counsel seem to have been present, no exception was taken, and the matter cannot be reviewed on error. Stewart v. Wyoming Range Co., 128 U. S. 383, 390, 9 Sup. Ct. 101, 32 L. Ed. 439. The verdict is for a sum less than the amount of actual damages set out in the bill of particulars, and in support of which evidence was adduced. It would seem that exemplary damages were not allowed. The court considered the case again on the motion for a new trial, and rendered an opinion in support of its denial of the motion.

[8] It is settled that this court will not interfere with the exercise of a sound discretion in the trial court respecting is disposition of such a motion. Big Brushy Coal & Coke Co. v. Williams, supra, 176 Fed. page 531, 99 C. C. A. 102; Pugh v. Bluff City Excursion Co., 177 Fed. 400, 101 C. C. A. 403 (C. C. A. 6th Cir.).

The judgment must be affirmed, with costs.