BRISTOL GAS & ELECTRIC CO. v. BOY.

BOY v. BRISTOL GAS & ELECTRIC CO.

(Circuit Court of Appeals, Sixth Circuit.   November 5, 1919.)

Nos. 3299, 3307.

**1. APPEAL AND ERROR ⬥═927(7)—REVIEW OF DENIAL OF MOTION TO DIRECT VERDICT.**

In reviewing the denial of defendant's motion for the direction of a verdict, the court will take the view of the evidence most favorable to plaintiff.

**2. ELECTRICITY ⬥═19(9)—NEGLIGENCE QUESTION FOR JURY.**

In an action for death of a boy, who took hold of a telegraph wire, which was claimed to be in contact with defendant's uninsulated high power wire, the question of defendant's negligence *held* for the jury, under the rule that, where there is such conflict in the testimony as to support a verdict for either party, the case is peculiarly for the jury.

**3. APPEAL AND ERROR ⬥═1005(3)—REVIEW OF DENIAL OF NEW TRIAL.**

Where the evidence was conflicting, the appellate court will not review the exercise of discretion by the trial court in refusing a new trial.

**4. DEATH ⬥═89—DAMAGES; MENTAL SUFFERING NOT ELEMENT OF RECOVERY.**

In an action under the Tennessee statutes for the death of a minor, where the father was the sole beneficiary, under Shannon's Code, § 4172(4), there can be no recovery on account of the suffering or anguish of either of the minor's parents.

**5. APPEAL AND ERROR ⬥═1067—HARMLESS ERROR IN FAILURE TO INSTRUCT FATHER WAS SOLE BENEFICIARY IN ACTION FOR DEATH OF CHILD.**

Where the declaration in an action for the death of an infant stated that plaintiff, the administrator, sued for the use of the father and mother, who survived, although under Shannon's Code Tenn. § 4172(4), the father was the sole beneficiary, defendant cannot complain, on the theory that sympathy for mother affected verdict, that the court failed to instruct that recovery would be for the father alone, where there was nothing to indicate that the jury knew who was the beneficiary, the form of the verdict negatived the inclusion of punitive damages, and the court commented on the absence of proof that the minor was conscious of any suffering at all.

**6. ELECTRICITY ⬥═19(4)—EVIDENCE OF DEFECTIVE INSULATION OF HIGH POWER WIRES.**

In an action for the death of a boy, who came in contact with a telephone wire, which carried a deadly current of electricity from defendant's high power wires, *held*, that testimony as to defective insulation, though the condition was shown to have existed for several years before the accident, was properly admitted.

**7. APPEAL AND ERROR ⬥═1050(1)—HARMLESS ERROR IN ADMISSION OF EVIDENCE.**

In an action for death of a boy, who received a fatal shock transmitted from defendant's high power wires by means of a telephone wire, *held* that, where defendant's witness affirmatively showed the condition of its wires at the time and place of the accident, defendant's complaint that the witness was permitted to testify to wire conditions at other times and places will not be reviewed.

**8. ELECTRICITY ⬥═19(4)—EVIDENCE AS TO INSULATION AND INSPECTION OF WIRES.**

In an action by the administrator of a boy, who received a fatal shock when the current from defendant's high power wire was transmitted by a telephone wire, *held*, that the trial judge did not exceed the limits of a fair discretion in admitting testimony that the general condition of that

⬥═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

portion of defendant's wire lines which included the place of accident had long been bad, and the wires had been in use for many years, for such testimony was peculiarly pertinent as affecting the question of due inspection.

9. COURTS ⬡⟹356—CONFORMITY ACT AS RENDERING APPLICABLE STATUTE AUTHORIZING REVIEW OF DENIAL OF NEW TRIAL IN REMITTITUR.

Where the federal District Court for Tennessee required plaintiff to enter a remittitur as a condition to denying defendant's motion for new trial, held, that the Conformity Act did not make applicable Acts Tenn. 1911, c. 29, Thomp. Shan. Code, §§ 4694a, 4694a1; giving plaintiff the right to review an order of remittitur made under protest, because of the trial court judge's opinion that the verdict was so excessive as to indicate passion, prejudice, etc., for such statutes do not affect a matter of substantive right, and would require a change in the established federal practice.

10. APPEAL AND ERROR ⬡⟹157—ORDER OF REMITTITUR NOT REVIEWABLE ON WRIT OF ERROR.

In absence of statute providing therefor, the action of the trial judge in ordering a remittitur as a condition to denying a motion for new trial is not reviewable on writ of error.

In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action by J. C. Boy, administrator of Cureton Boy, deceased, against the Bristol Gas & Electric Company. There was a judgment for plaintiff, defendant's motion for new trial being denied, on condition that plaintiff enter a remittitur, and both plaintiff and defendant bring error. Affirmed.

Robert Burrow, of Bristol, Tenn., for plaintiff.

C. J. St. John, of Bristol, Tenn., for defendant.

Before KNAPPEN and DENISON, Circuit Judges, and McCALL, District Judge.

KNAPPEN, Circuit Judge. The administrator sued the Electric Company for injuries resulting in the death of his decedent, caused by alleged negligence of the Electric Company in failing to keep properly insulated its high-tension power wires. There was trial by jury, and verdict for $10,000. Defendant's motion for new trial was denied, on condition that plaintiff remit $5,000 from the verdict. The remittitur was made under protest. Under the writ in No. 3299, the defendant complains of the judgment against it. In No. 3307, the administrator complains that he was required to remit.

The theory on which plaintiff recovered is that decedent, then 7 years of age, while passing along the sidewalk of a public street in Bristol, touched or seized a piece of telephone wire, suspended from a tree, overhanging and terminating within three feet of the sidewalk, the telephone wire being charged with electricity through contact with defendant's wire at a place where the insulation was worn off or was defective, whereby decedent was either killed directly by the shock or, as the result thereof, by being thrown so violently to the sidewalk that he was killed by the breaking of his neck. Defendant assigns several alleged errors.

⬡⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1-3] 1. The trial judge refused defendant's request, at the close of the evidence for peremptory instruction of verdict in its favor, on the ground that there was no substantial evidence to sustain a recovery. We think the request for directed verdict was properly denied. In considering this question we, of course, take the view of the evidence most favorable to plaintiff. Erie R. R. Co. v. Weber (C. C. A. 6) 207 Fed. 295, 125 C. C. A. 37. There was direct testimony on the part of a small boy tending to show that deceased, while running along on the sidewalk, seized the hanging telephone wire and immediately fell to the ground. The criticisms of this boy's testimony, on account of his youth and alleged contradictory statements, were for the jury's consideration. There was also testimony otherwise that deceased, after uttering a cry, was seen apparently on his knees and then to fall over. He was practically dead when picked up. There was also testimony tending to show that the telephone wire had been hanging in the tree, and near defendant's electric wires, for about four weeks; that the insulation on defendant's wires was worn off in two or more places in the vicinity of the accident, probably caused by their contact with the branches of the tree, especially during wind, the insulation being in one place worn bare for a space of about four feet; that the leaves on the tree in the vicinity of both the telephone wire and defendant's wire were killed, as if by burning; that for several days before the accident more or less sparking was seen along defendant's wire and the hanging telephone wire; that defendant's wires in question had been in the same location 15 or 20 years without renewal; that immediately following the accident the telephone wire was found crossing defendant's electric wire at a point midway between two uninsulated portions of wire, and at a distance of about two feet from the large bare place.

The record would support an inference of negligence in failing to discover and remedy the condition in question. In the briefs here there is no contention to the contrary. The fact that the telephone wire carried no current, except as it came in contact with an uninsulated portion of defendant's electric wire, and that it was not found in contact with the uninsulated spot immediately following the accident, does not necessarily prove that it was not in such contact when seized by the deceased, as a loosely hanging wire would naturally change its position from time to time, especially when seized or touched. The boy's neck was found to be broken, presumably from the fall; but defendant would be liable for the effect of a fall caused by an electric shock, even though not sufficient in itself to cause death. There was testimony on the part of physicians and others that the boy's hand did not show signs of being burned by the wire, opposed to which was testimony having a tendency to the contrary. There was also evidence of a lack of other symptoms normally to be found in case of death by electrocution, also that the telephone wire did not show such a burn as would naturally be caused by contact with defendant's highly charged wire; but such testimony did not necessarily overcome the theory that the child had received shock enough to cause him to fall, although not strong enough to have electrocuted him.

The case was submitted to the jury in a careful charge. In denying motion for new trial the court held that the verdict was not "so clearly and manifestly against the evidence or weight of the evidence" as to justify setting it aside. While there was such conflict in the testimony as to support a verdict for either party, we think the case peculiarly one for a jury (Rochford v. Pennsylvania Co. [C. C. A. 6] 174 Fed. 81, 98 C. C. A. 105), and that there was substantial evidence to support the verdict. We cannot review the exercise of discretion by the court below in refusing a new trial. Robinson v. Van Hooser (C. C. A. 6) 196 Fed. 620, 627, 116 C. C. A. 294.

[4, 5] 2. The declaration states that the plaintiff administrator sued "for the use and benefit of father and mother of his intestate, who survive him." In fact, the father would be the sole beneficiary. Shannon's Tennessee Code, § 4172 (4). We see no merit in the criticism of the court's failure to instruct that the recovery would be for the father alone. Not only does the record fail to show any request to so charge, or any exception which can be identified as aimed at that proposition, but all possibility of error is negatived by the fact that the recovery would be the same, regardless of beneficiary, and the instruction limiting recovery to the present value of what the deceased would have earned during the remainder of his life, plus compensation for his suffering—the court commenting on an absence of proof "that the boy was conscious of suffering at all." The suggestion that the recovery may have been increased by sympathy for the mother is too intangible to be considered. No recovery could be had for the suffering and anguish of either parent. Freeman v. Railroad, 107 Tenn. 340, 348, 64 S. W. 1. There is nothing to indicate that the jury even knew who the beneficiary was. The form of the verdict considered in connection with the charge of the court, negatives the inclusion of punitive damages.

[6] 3. Testimony as to condition of wires:

(a) The accident occurred on Eleventh street. A witness, Kiebel, who lived on Anderson street, the second lot west of Eleventh street, after testifying that he had noticed after the accident (presumably immediately) dead leaves in the trees around the electric wires in question, that the insulation had worn off the inside wire to a great extent, and that the outside wire had some patches of insulation off, was permitted to testify that—

"The insulation was off a large per cent. of the wires along Windsor avenue and Eleventh street and Anderson street in this immediate locality at the time of the accident, and had been in that condition from 10 to 12 years at least."

The objection that the testimony was not confined "to the point of the accident" is without apparent merit. Moreover, under the charge, recovery was not permitted on account of defective insulation elsewhere than at the point where the accident occurred. That the condition was shown to have existed several years did not make it the less pertinent.

[7] (b) The foreman of defendant's electrical department (as a witness for defendant) testified on direct examination that "the trees soon wear the insulation out," and that wires in contact with trees "show

little fireworks;" that while defendant's wire at the place where the telephone wire was "hanging down" was fair (presumably meaning at or immediately after the accident), it was "off at a distance of about four or five feet towards Windsor avenue, and just in spots on the other side of that," and that there was "another place off back five or six feet towards Anderson street"; that "we received no notice that there was a loose wire out there until after the accident; some of our men had been along there not over a week before the accident, and there was no wire then that we could see; we made an examination, we have to watch them all the time." On cross-examination he admitted that at the former trial he had testified to an inspection "30 to 60 days before the accident"; that "sparking in the trees is very common in Bristol. We trim out the trees whenever we can, but the property owners won't always let us do that." In answer to a question, "And that is the condition of the wires all over the city?" he testified, against objection, "Yes, sir; wherever there are trees." The ground of the objection was not stated, nor exception taken to the court's ruling. In view of defendant's affirmative showing of the condition of its wires at the place of the accident, we are not called upon to consider the complaint that the witness was permitted to testify to wire conditions at times and places other than those of the accident. Robinson v. Van Hooser, supra, 196 Fed. 620, 624, 627, 116 C. C. A. 294.

[8] (c) A witness for plaintiff had on cross-examination given testimony tending to show that contact with the telephone wire would not have carried a current unless defendant's electric wire was grounded, and that if it was so grounded at the point in question he did not know it, unless it was in the trees somewhere. Plaintiff thereupon called another witness, apparently to show that the wires were in fact grounded. Against objection that the witness' observation was a month after the accident, he testified that he "saw several places on Windsor avenue and Eleventh street, and I believe on State street, for a short distance, where these primary wires, or 2,300-volt wires, were in contact, or had been in contact, with the twigs or limbs of the trees, and I remember one place on Windsor avenue where one of the wires was in contact with the wood of the pole, where it had rubbed the side of the pole, and rubbed the insulation off the wire." Exception was taken to "proving any other point, except on Eleventh street." Thereafter defendant's counsel disclaimed reliance upon Deulany's testimony as to grounding, and plaintiff discontinued that line of examination.

We find no error in the court's action. The testimony related to what seems to have been the vicinity of the accident. In view of the previous testimony, it was open to inference (though not to presumption) that a condition found a month later existed at the time of the accident. Upon this record, we have no difficulty in holding that the trial judge did not exceed the limits of a fair discretion in admitting testimony that the general condition of that portion of defendant's wire lines which included the place of the accident had long been bad, and that the wires had been in use for many years. Vicksburg, etc., R. R. Co. v. Putnam, 118 U. S. 545, 553, 7 Sup. Ct. 1, 30 L. Ed. 257. Such testimony was peculiarly pertinent as affecting the question of due

inspection. Texas & Pacific R. R. Co. v. Rosborough, 235 U. S. 429, 35 Sup. Ct. 117, 59 L. Ed. 299.

We have examined the remaining errors assigned by defendant, and find no merit in them. We think defendant not entitled to complain of the judgment.

[9, 10] *The Plaintiff's Cross-Writ.* We are clearly of opinion that the trial judge's action in requiring remittitur as a condition of denying motion for a new trial is not reviewable. In the absence of statute providing therefor, such would plainly be the case. Woodworth v. Chesbrough, 244 U. S. 79, 37 Sup. Ct. 583, 61 L. Ed. 1005. The statute of Tennessee, however, gives a plaintiff a right to a review of an order of remittitur (complied with under protest) made because of the trial judge's opinion that the verdict is "so excessive as to indicate passion, prejudice, corruption, partiality, or unaccountable caprice on the part of the jury." Acts Tenn. 1911, c. 29; Thompson's Shannon's Code, §§ 4694a, 4694a1. But were the instant case thought to be within the terms of that statute (although the only finding was that the verdict was "excessive"), the statute itself is inapplicable, because not within the federal Conformity Act. That act does not apply to the personal conduct and administration of the judge in the discharge of his separate functions, nor to motions for new trial nor to proceedings on review. Were this Tennessee statute applicable, it would result, not only in requiring a trial judge, sitting in a federal court, to decide on motion for new trial the question of fact whether the size of the verdict is such as to indicate "passion, prejudice," etc., but also in requiring a federal court of review to determine for itself this same question of fact— all contrary to the settled practice in the federal courts. U. P. Ry. Co. v. Hadley, 246 U. S. 330, 334, 38 Sup. Ct. 318, 62 L. Ed. 751.

That a state statute having such effect is not within the Conformity Act appears to us too plain for argument. It seems enough to refer to this court's discussion of the general subject in Knight v. Illinois Central R. R. Co., 180 Fed. 370, 103 C. C. A. 514. The decisions giving effect in the federal courts to state statutes guaranteeing as of absolute right, and as matter of law, a second trial of an action for the recovery of real property within the state (Equator Co. v. Hall, 106 U. S. 86, 1 Sup. Ct. 128, 27 L. Ed. 114; Smale v. Mitchell, 143 U. S. 99, 12 Sup. Ct. 353, 36 L. Ed. 90) are not analogous. Such statutes are not merely remedial, but are matter of substantive right, like the right to voluntary nonsuit. Barrett v. Virginian Ry. Co., 250 U. S. 473, 478, 39 Sup. Ct. 540, 63 L. Ed. 1092; Knight v. Illinois Central R. R. Co., supra. Simms v. Simms, 175 U. S. 162, 169, 20 Sup. Ct. 58, 44 L. Ed. 115, is not opposed to the conclusion we have reached. So far as of interest here, the point there decided is that the Supreme Court of the United States, on affirming a judgment of the Supreme Court of a Territory, will so modify *that* judgment as to correct the failure of the territorial Supreme Court to give effect to a right of remittitur while the case *is in that court*—given by a territorial statute. Inasmuch as we think the court below, in requiring a remittitur as condition of denying motion for new trial, was well within the limits of a proper discretion,

the result would be the same, whether the cross-writ is dismissed, or the action complained of affirmed.

The order will be that the judgment of the District Court is affirmed; the defendants in error under the respective writs to recover his or its costs of this court.