## BRISTOL GAS & ELECTRIC CO. v. DECKARD.

(Circuit Court of Appeals, Sixth Circuit. January 11, 1926.)

No. 4434.

**1. Electricity ☞17—Company not under duty to inspect consumer's apparatus.**

Company, furnishing electricity, and which has supplied and installed apparatus and wiring for consumer, is not, as a general rule, charged with duty of maintaining and inspecting apparatus and wiring, nor responsible to consumer or its employés for injuries, in absence of evidence of excessive voltage or other negligence in connection with furnishing current.

**2. Electricity ☞17—Company, knowing defects in consumer's apparatus, liable for injuries to his employé.**

Company, furnishing electricity with knowledge of defective condition of consumer's apparatus and wiring, which it has installed and been called upon to repair, is liable for death of consumer's employé caused thereby.

**3. Electricity ☞19(10) — Whether company knew of defective condition of consumer's apparatus held for jury.**

Evidence *held* to warrant submission of question whether electric company had knowledge of defective condition of consumer's apparatus, such as it might reasonably have apprehended was likely to cause injury or death of consumer's employé.

**4. Electricity ☞19(5)—Finding death caused by electric current and not by lightning held not result of speculation.**

Finding that death of brick company employé was caused by electric current furnished by defendant rather than by lightning *held* not result of speculation, in view of evidence that decedent was killed while trying to start motor after storm was over.

**5. Electricity ☞19(13)—Instruction on electric company's liability for death of consumer's employé held not at fatal variance with declaration.**

In action against electric company for death of consumer's employé, instruction permitting recovery if proximate cause of decedent's death was the combined and concurring negligence of defendant and consumer *held* not erroneous, though negligence counted on in declaration was that of defendant alone; the variance being not misleading, but such as could have been cured by amendment.

**6. Electricity ☞19(13)—Instruction held not erroneous as imposing on electric company duty of inspecting consumer's apparatus.**

In action against electric company for death of consumer's employé, through use of apparatus known by defendant to be defective, instruction that defendant was liable if it might reasonably have anticipated that person taking hold of handle to start machinery would be shocked by leakage or escape of electricity *held* not erroneous as imposing on defendant duty of inspection.

**7. Electricity ☞19(13)—Instruction on question whether consumer's employé violated superior's order held not erroneous.**

In action against electric company for death of consumer's employé, through use of defective apparatus, whether deceased in attempting to use apparatus had violated his superior's instructions *held* question of fact, and instruction that, if he believed storm was over when he went into power room, he would not be violating his superior's order not erroneous.

**8. Electricity ☞19(3)—Defendant has burden of proof of contributory negligence.**

Electric company, sued for death of consumer's employé, arising from use of defective apparatus, has burden of proof of decedent's contributory negligence.

**9. Electricity ☞19(13)—Instruction on electric company's liability for death of consumer's employé held not misleading.**

In action against electric company for death of consumer's employé, through use of apparatus known to defendant to be defective, refusal of instruction affecting defendant's liability, if it furnished only current contracted for, and giving of instruction that question was merely whether defendant sent electricity contracted for in under circumstances such that it should have anticipated trouble, *held* not misleading or grounds for reversal, particularly in view of want of exception.

In Error to the District Court of the United States for Eastern District of Tennessee; Xenophon Hicks, Judge.

Action by James E. Deckard, administrator, etc., against the Bristol Gas & Electric Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Fred H. Parvin, of Greeneville, Tenn.. and C. J. St. John, of Bristol, Tenn. (Caldwell & Caldwell and St. John & Gore, all of Bristol, Tenn., and Susong, Susong & Parvin, of Greeneville, Tenn., on the brief), for plaintiff in error.

Robert Burrow, of Bristol, Tenn. (J. D. Baumgardner and Burrow & Burrow, all of Bristol, Tenn., on the brief), for defendant in error.

Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Defendant in error (plaintiff below) recovered judgment against plaintiff in error (hereinafter called defendant) for alleged negligent injuries causing the death of plaintiff's decedent. This writ is to review that judgment.

Decedent was in the employ of a brick manufacturer whom, for convenience, we shall call the brick company. Defendant was engaged in manufacturing electricity and supplying it to the public, including the furnishing of power to the brick company, for operating its brickmaking machinery. During at least the early part of the night in which decedent met his death there was a severe electrical storm. Early in the morning decedent was found dead under conditions suggesting that he had been killed by an electric current while attempting to start the machinery by placing his hand on the handle attached to the starter box.

Plaintiff contends that the fatal current was due to a defective condition of the wiring or to its connection with the starter box. At the conclusion of the testimony defendant asked directed verdict in its favor, upon the ground that the evidence showed that all the machinery, and the line over which the operating current was transmitted thereto from a point outside the brick plant, was owned and controlled by the brick company; that there was no evidence that defendant was under any duty to inspect or keep the brick company's machinery in repair, or of any negligence on defendant's part, or anything to show whether decedent's death resulted from electric current supplied by defendant, rather than by lightning; also that decedent's death was contributed to by his own negligence and violation of instructions (by reason of the storm) not to go to the place where he was killed.

[1, 2] 1. We think the refusal to direct verdict for defendant was not error. It is true that the undisputed evidence showed the brick company's ownership and control of the electrically operated machinery and of the line transmitting current thereto; and that by the general rule, supported by the weight of authority, defendant, which supplied the electricity, and had supplied and installed the apparatus and wiring (and although the brick company maintained no expert electrical force, but was in the habit of specially employing defendant to make repairs to its wiring and apparatus, when expert attention thereto was needed), was not, merely because of such facts, charged with the duty of maintaining and inspecting the apparatus and wiring, nor responsible to the brick company or its employés for injuries, in the absence of evidence of excessive voltage, or other negligence on defendant's part, in connection with the furnishing of the current. Minneapolis, etc., Elec. Co. v. Cronon (C. C. A. 8) 166 F. 651, 654, 657, 92 C. C. A. 345, 20 L. R. A. (N. S.) 816, where a number of authorities are cited and discussed; Memphis, etc., El. Co. v. Speers, 113 Tenn. 83, 81 S. W. 595; Hill v. Pacific G. & E. Co., 22 Cal. App. 788, 136 P. 492; Peters v. Lynchburg L. & T. Co., 108 Va. 333,[1] 61 S. E. 745, 22 L. R. A. (N. S.) 1188.

On the other hand, knowledge by defendant of the alleged defective condition of such wiring and appliances, and its continued furnishing of electric current after and with such knowledge, would make it liable for the death of decedent caused thereby. Hawkins v. Vermont Hydro El. Co. (Vt.) 126 A. 517, 37 A. L. R. 1359, and cases cited at page 1366; Pressley v. Bloomington R. Co., 271 Ill. 622, 630, 631, 111 N. E. 511; Drury v. E. St. Louis L., etc., Co., 194 Ill. App. 121, 129; Hoffman v. Leavenworth, etc., Co., 91 Kan. 458, 461, 138 P. 632, 50 L. R. A. (N. S.) 574; Aurentz v. Nierman, 76 Ind. App. 669, 674, 675, 131 N. E. 832; Toney v. Power Co., 180 Iowa, 1362, 163 N. W. 394. Under such circumstances defendant's duty to exercise due care to protect the employés of the brick company would be the same as that required to safeguard the traveling public from overhanging wires. Denver Consol. El. Co. v. Walters, 39 Colo. 301,[2] 89 P. 815.

[3] The next important question thus is: Was there substantial testimony tending to show that defendant knew of the defective condition of the wiring as being such as it might reasonably have apprehended was liable to cause injury or death to the brick company's employés through the continued

---

[1] The general rule above stated is not in conflict with the equally general rule that an electric company, supplying current to a consumer for light or power, must take care of it, and, if it gets away because the wires of the supplying company are out of order, causing injury to persons rightfully in the building so served, is presumptively negligent, and is bound to exculpate itself. Memphis, etc., Co. v. Letson (C. C. A. 6) 135 F. 969, 972, 68 C. C. A. 453; Union Light, etc., Co. v. Arntson (C. C. A. 8) 157 F. 540, 542, 87 C. C. A. 1.

[2] The reason of the rule is thus stated in Hoffman v. Leavenworth Co., supra: "From the time of acquiring such knowledge the seller's contract duty cannot be required save on condition that such defect be remedied, for otherwise it must then furnish a dangerous force knowing that life and limb might be imperiled by reason of such defect, which neither a contract nor the law nor the common instincts of humanity could require of any one."

flow of the current into the plant.[3] There was testimony that about a year before decedent was killed a transformer on the starter box was burned out. Defendant's electrician found that this was caused by a leaky roof just over the wiring that ran down from the motor. He put in only the new wires needed to make the connection. It does not appear that he did anything about the leaky roof. A witness who testified that he worked at the plant for a short time about eight months before the fatal accident (and thus several months after the transformer had been burned out) said that water would seep in off the hill; that the motor "would get dangerous, and you could not handle it"; and that he noticed electricity escaping four or five times. He says that sometimes it would knock one down when trying to shut it off, and that on some days it was necessary to stop the motor 12 or 15 times in a day's run to "cut the heat off"; that defendant sent a man out to fix the motor following a shock to an employé caused by the electrified rails of the dump line. Presumably defendant would thus be advised of the shock. Another witness, an employé of the brick company for several years before as well as at the time of decedent's death, says that he knew nothing about electricity escaping, but that during rainy spells one would be shocked on the tracks, apparently meaning the steel rails which ran into the brickyard. The record does not show that defendant took any steps to have the leaky roof remedied, or even to advise the brick company of the condition. There was testimony that on the morning after the accident the roof was leaking; that it was wet around the motor box. It also appeared that at this time the lead sheathing of the conduit which inclosed the wires connecting with the starter box was found broken in several places, and there was water in the conduit. The purpose of the sheathing was apparently to protect the wires against damage. We think it was open to the jury to find that defendant had knowledge of conditions making unsafe the use of the wires and appliances in and about the starter box, and that defendant should reasonably have apprehended that one attempt-

ing to take hold of the handle to start the machinery was likely to receive a dangerous electric shock, and that, in continuing, with this knowledge, to supply a current of 2,300 volts (which, it scarcely need be said, is a deadly current) was guilty of negligence causing decedent's death.

[4] Nor do we think that the verdict that decedent's death was caused by an electric current generated by defendant rather than by lightning could have been reached only by speculation. While there was evidence tending to support an argument in favor of the lightning theory, there was substantial testimony tending to support the theory adopted by the jury. It was fairly apparent that decedent was killed while trying to start the motor, and (as it was reasonably open to the jury to infer) at a time when the storm appeared to be over, and also inferably after it was in fact over. Among the pregnant considerations are the facts that decedent's hands were tightly drawn and were burned to a crisp.

Considering the testimony in the case in its aspect most favorable to plaintiff, we think the case was rightly left to the jury.

It remains to consider certain complaints of instructions given or refused.

[5] 2. We find no error in the instruction permitting recovery, even if the proximate cause of decedent's death was the combined and concurring negligence of the defendant and the brick company. The instruction correctly stated the law. Grand Trunk Ry. Co. v. Cummings, 106 U. S. 702, 1 S. Ct. 493, 27 L. Ed. 266. The jury was told that, if decedent came to his death solely and proximately by reason of defective machinery of the brick company that in itself caused his death there could be no recovery. The brick company's negligence, if any, neither added to nor subtracted from defendant's liability. True, the negligence counted on in the declaration was that of the defendant alone; but the variance was not such as to mislead defendant, and so was not material. Grayson v. Lynch, 163 U. S. 468, 16 S. Ct. 1064, 41 L. Ed. 230. Indeed, no question of variance was raised until by the exception to the instruction referred to, and thus after the testimony had been closed. If requested, the court could and should have allowed such amendment as thought necessary to meet the proofs. Pennsylvania Co. v. Whitney (C. C. A. 6) 169 F. 572, 579, 95 C. C. A. 70.

[6] 3. Nor do we find error in the paragraph of the charge that, if defendant might

---

[3] On review of this question we cannot weigh the testimony or pass upon the credibility of witnesses (Burton v. United States, 202 U. S. 344, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392), but must take the view of the evidence most favorable to plaintiff (Milwaukee, etc., Ins. Co. v. Rhea [C. C. A. 6] 123 F. 9, 12, 13, 60 C. C. A. 103; Bristol Gas & Elec. Co. v. Boy [C. C. A. 6] 261 F. 297, 299).

have reasonably anticipated and apprehended that a person taking hold of the handle part to start the machinery would be shocked by the leakage or escape of electricity, it would be liable. The criticism is that the instruction imposed on defendant the duty of inspection. But not only does the portion of the charge of which the criticized paragraph forms part convey to our minds no such impression, but the jury was expressly instructed that defendant was under no obligation to inspect the brick plant.[4]

[7, 8] 4. After the jury had been instructed that, if the foreman of the brick plant ordered decedent not to go back into the power room, and that in violation of that order decedent re-entered that room, and as a result of his doing so lost his life, plaintiff could not recover, the jury was further told, upon plaintiff's request, that, if decedent believed the storm was over, and went into the

power room, he would not be violating the order of his superior, if such was the order. The criticism upon this additional instruction is that the testimony established the fact that, when decedent went into the power room he violated his superior's instruction. We think the record presented in that respect a question of fact. The burden of proof of decedent's contributory negligence was on defendant. Central Vermont R. Co. v. White, 238 U. S. 507, 512, 35 S. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252.

While the brick plant superintendent says he instructed decedent not to go into the motor room again that night, another witness testified that the instruction was not to enter the room while the storm was on, but after the sky had gotten clear, to start the motor, after it was perfectly safe; and while a witness testified that it stormed all night, there was other testimony tending to show that the storm was over, or appeared to be over, in the early part of the evening, and that, if it stormed at all afterwards, it was only intermittently.

[9] 5. Complaint is made of the refusal to instruct (at the close of the regular charge) that no recovery could be had if it should be found that no excessive current of electricity was sent by defendant into the brick company's plant over its wires, but only such current as the brick plant had contracted for, and that deceased was killed without fault or negligence on the part of the defendant. The court declined to give the request "in that language," stating, however, that "there is no evidence in this case of any excessive amount of electricity from the defendant's power plant"; that the uncontradicted evidence was that defendant was furnishing the amount of power contracted to be furnished, and the question of excessive amount of electricity is not a debatable question to be determined by the jury; that the question was merely whether "they sent the amount of electricity in there under such circumstances that they might have anticipated trouble." There is thus no reason to think that the jury could have been misled. It is perhaps enough to say, however, that no exception was taken to this refusal.

The judgment of the District Court must be affirmed.

---

[4] The portion of the charge of which the specific instruction formed a part (aside from the express instruction just referred to) may be thus sufficiently summarized:

If you find that the electrical equipment upon the inside of the brick company's plant was defective and out of repair in this, that the casing or conduit inclosing the wires from the starter box to the motor, or otherwise, had become detached from the starter box, or had become broken in places, or both, that the roof had become leaky, or from other causes dampness had been permitted to enter, that defendant knew the circumstances and the situation there, to the extent that reasonably prudent operatives of the defendant's plant might have reasonably anticipated and apprehended that under such circumstances the continuation of the flow of electricity into the building and plant of the brick company might likely, probably cause electrical energy to escape into the handle part, that the defendant might have reasonably anticipated and apprehended that a person taking hold of the handle part to start the machinery would be shocked by this leakage or escape of electricity, that under such circumstances it continued its flow of electricity into the brick plant, and while it was flowing or being discharged there the deceased undertook to start the motor by operating the handle part, and under such circumstances the proximate cause of his death was the conduct and negligence of the defendant in this particular, then I instruct you that your verdict would be in favor of the plaintiff.

We think there was substantial testimony tending to establish the facts upon which the instruction was predicated, and that the instruction correctly stated the law.