LOUISVILLE & N. R. CO. v. SUMMERS.

(Circuit Court of Appeals, Sixth Circuit. November 3, 1903.)

No. 1,195.

1. ACTIONS—CONSOLIDATION—WRITS OF ERROR.

Where two separate actions depending on the same facts were consolidated and tried together for convenience only, but the verdicts and judgments were separate, it was improper to include both in a single writ of error.

2. RAILROADS—INJURIES AT CROSSING—LOOKING AND LISTENING—QUESTION FOR JURY.

In an action for death at a railway highway crossing, whether decedents were guilty of contributory negligence in failing to stop and look a second time before crossing the track *held* a question for the jury.

3. SAME—CONTRIBUTORY NEGLIGENCE—EFFECT—STATUTES—DIRECTION OF VERDICT.

Where a state statute provided that the contributory negligence of a person injured while crossing a railroad track should not preclude a recovery, but should be taken in mitigation of damages, and the jury might have found under the evidence that defendant railroad company in such case was at fault, it was not error for the court to refuse to direct a general verdict for defendant.

4. DEATH—PECUNIARY BENEFIT—DECLARATION.

In an action for wrongful death it was not necessary that the declaration should allege that decedents' beneficiaries, for whom the action was brought, had theretofore received any pecuniary benefit from deceased, since they were entitled to recover if they would have been likely to have received benefit from his continued existence.

5. SAME—TRIAL—INSTRUCTIONS — REFERENCE TO DECIDED CASES — ESTOPPEL TO OBJECT.

Where counsel for both parties read decided cases to the jury for the purpose of showing how courts had applied the law to similar cases, they could not object that the court, as a part of its charge, referred to a case he had previously tried merely as an illustration of the rules and principles he was enunciating.

6. SAME—EVIDENCE.

Where, in an action for injuries at a railroad crossing, it was clearly proven and admitted by counsel for defendant that decedents stopped to look and listen at a certain place before attempting to cross the tracks, the erroneous admission of evidence that decedents had made previous trips across the track on the day of the accident, and on such previous trips had stopped, looked, and listened, was harmless.

7. SAME—NEW TRIAL—GROUNDS—REVIEW.

Where, in an action for negligence, the trial court entertained a motion for a new trial on the ground that the damages awarded by the jury were excessive, and considered the reasons urged in support thereof, his estimate of the weight and sufficiency of such reasons is not reviewable.

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

This is a consolidated cause which includes two actions brought by the defendant in error as the administrator of the estates, respectively, of his two brothers, Thomas J. Summers and Robert H. Summers, against the railroad company, to recover damages resulting from an accident which caused the death of both of them, and which, it was alleged, was occasioned by the negligence of the railroad company. The pleadings and the facts in the two actions being identical, they were, by order of the court, consolidated, and

¶ 2. See Railroads, vol. 41, Cent. Dig. § 1173.

tried as one. Separate verdicts and judgments for the plaintiff were rendered. The writ of error is single, and brings up both judgments under the titles of each, and the assignments of error reach both the judgments.

John B. Keeble, for plaintiff in error.
Jordan Stokes, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. At the hearing of this cause our attention was attracted to the circumstance that, although it was proposed to review two separate judgments, only one writ of error was sued out and one assignment of errors filed. Technically this was irregular, as the consolidation of the causes in the court below was only for convenience in trying them. The verdict and judgments were separate, as they should have been, and had no dependence upon one another, and no relation, except that they rested upon a similar, and to some extent a common, record. But the defendant in error makes no objection on that account, and we conclude we may waive the irregularity, as was done by the Supreme Court in similar circumstances in Brown v. Spofford, 95 U. S. 474, 24 L. Ed. 508.

The accident in which the deceased brothers lost their lives occurred at a crossing of the railroad by a highway in the village or "town" of Hendersonville, Tenn.; the railroad running from northeast to southwest, and the highway almost due north and south. It happened on an afternoon in January, 1902. The decedents were riding south on the highway on a wagon drawn by two horses driven by one of the brothers; the other, riding on the side of the bed of the wagon, faced the west. At a point 50 or 60 yards north of the track, they stopped, and seemed to be looking and listening for trains which might be passing on the railroad. They then resumed their course, and did not again stop before the accident. They first crossed a side track lying 10 or 12 feet north of the main track and parallel therewith, and then, as their wagon was moving over the main track, they were struck by an engine bringing a caboose in train from the northeast at the speed of 35 miles an hour, and were instantly killed. The engine was an extra, not running on the regular time schedule. On the side track east of the crossing was standing a long train of cars, which, with the depot buildings, obscured to some extent trains moving on the main track for a distance of about 600 feet, at which point the track turns to the left, and runs through a cut, further obscuring the track and trains upon it, from the place where the decedents stopped, as above mentioned. But there was testimony tending to show that the tops of cars moving on the main track could be seen over those standing on the side track from where the brothers stopped and looked and listened for approaching trains, and, by inference, the smokestack of the engine also.

There is a statute in Tennessee which alters the common-law rule in respect to the effect of contributory negligence of the plaintiff by prescribing that it shall not absolutely preclude recovery, but shall be taken in mitigation of damages. It was contended for the railroad company that the decedents were so clearly negligent in not

again stopping to look and listen before attempting to cross the main track that the court ought to have taken that question from the jury, and not to have assumed it to have been fairly open in instructing them. A long and very thorough analysis of the testimony and comparison thereof with the facts of many adjudged cases is made by learned counsel for the plaintiff in error in support of this contention. But we think that, conceding the general rule of the duty to stop and look and listen, it is not, as an entirety, applicable to all circumstances; nor is there any more definite statement of the measure of time, or the intensity and particularity of the attention which must be given, than that the caution a reasonably prudent man would give, in the circumstances, must be exercised. Nor can the distance from the track at which the precaution is to be taken be fixed by any more definite test. It might have been thought by the jury that the decedents took such reasonable precaution in stopping when they did to look and listen, and were justified in being satisfied, by what they observed, that the passage was clear of danger. There was evidence that the place where the deceased parties stopped was better than any other, unless, perhaps, very close to the track, for observing the condition of things on the railroad in the direction from which danger might be apprehended, and that their means of observation there were sufficient to excuse them from again stopping for the same purpose. And the jury might also have thought that the degree of caution which they were bound to exercise was in some measure affected by their supposition that the railroad company would observe its duty, in that locality, of blowing the whistle or ringing the bell of the engine in running through the town. We do not mean to say that such a supposition may be absolutely relied upon as an excuse for not taking due precaution, but it would seem to be an element to be taken into account in considering the reasonableness of the conduct of the decedents, and that the railroad company ought not to complain thereof.

There was a request that the court should direct a general verdict for the defendant, which the court denied. The defendant excepted. But, as we shall hereafter indicate, it cannot be successfully contended that the jury might not have found the defendant at fault, and the controversy was reduced, under the statute above referred to upon the effect of contributory negligence, to a question of damages, and the court could not have charged that the plaintiff was not entitled to a verdict for any amount.

At the close of the judge's charge to the jury the record states that the defendant's counsel requested the court to give the jury certain special instructions, which the court refused, to which action of the court in refusing the said instructions counsel for defendant then and there severally excepted. The exceptions taken by the plaintiff in error to the refusal of requests for instructions and to instructions given furnish the ground for 25 assignments of error. Some of these assignments have been dropped in the brief and argument. We have given attentive consideration to those which are still insisted upon, but shall discuss only those which seem to us to materially concern

the merits of the case. The following direction was requested by the defendant:

"In regard to the case of J. M. Summers, administrator of Robert Summers, you are instructed that, in view of the fact that the declaration in this case does not allege any pecuniary damage to the plaintiff, and does not set forth that the beneficiaries for whose benefit this suit was brought, had ever received any pecuniary benefit from the deceased, the plaintiff can recover only nominal damages in this case in case you should find for the plaintiff."

The request was refused, and, as we think, properly. It was not necessary to allege in the declaration that the beneficiaries had theretofore received any pecuniary benefit from the deceased. The material question was whether they would have been likely to have received any if his life had not been cut short. The accident happened, as above stated, in the town of Hendersonville. A statute of Tennessee (Shannon's Code, § 1574, subsecs. 3, 4) prescribed the duty of the railroad company in running its trains in such places as follows:

"(3) On approaching a city or town the bell or whistle shall be sounded when the train is at a distance of one mile, and at short intervals until it reaches its depot or station; and on leaving a town or city, the bell or whistle shall be sounded when the train starts, and at intervals until it has left the corporate limits.

"(4) Every railroad company shall keep the engineer, fireman or some other person upon the locomotive, always upon the lookout ahead, and when any person, animal or obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident."

And section 1575 declared that:

"Every railroad company that fails to observe these precautions or cause them to be observed by its agents and servants, shall be responsible for all damages to persons or property occasioned by or resulting from any accident or collision that may occur."

And the question of fault on the part of the defendant was tried by the test as to whether it had complied with these provisions of the law. There was evidence tending to prove that there was no sounding of the whistle or bell, such as required by subsection 3, especially the requirement that it shall be at short intervals, and there was also evidence tending to prove that no proper lookout ahead was kept on the engine as required by subsection 4. We are not, of course, to be understood as deciding that the facts were so. But we are constrained to think that the evidence was such as that the court could not properly take the question from the jury. It would serve no useful purpose to detail the testimony. The circumstances of cases differ so much that precedents are about as likely to embarrass as to aid the solution of such questions. The court charged the jury in clear and unmistakable language that, if the defendant complied with those requirements, the plaintiff could not recover, thus eliminating from the case all question of the right of plaintiff to recover upon common law grounds.

The assignment of error which has exercised us most is one which is directed to a part of the judge's charge in which he referred to a case which he had tried in another jurisdiction (the case of Grand Trunk R. R. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed.

485, as we suppose), the details of which he recited, as well as the verdict of the jury, and his ruling thereon, which was affirmed by the Supreme Court of the United States. This was done in a way which possibly indicated a precedent for them, although the judge stated to the jury that it was an illustration merely of the rules and principles he was laying down for them. If this were all, we should be disposed to say there was error in thus, perhaps, leading the jury away from their own duty to the acceptance of a wholly irrelevant precedent. But we discover in the bill of exceptions that the counsel for the respective parties had paved the way for such a practice by themselves reading decided cases to the jury to show how the courts applied the law to such cases, and counsel for defendant had read in particular a case which showed how the court had dealt with certain facts involving the duty "to stop and listen" in coming upon a railroad, and held that upon the facts the plaintiff was not entitled to recover. Northern Pac. R. R. Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014. And the judge referring to that and the case he had himself instanced, said:

"The two cases are not all in conflict with each other, but the circumstances were different. And it is the circumstances of a particular case, and of this case that is before you, by which you are to judge. I have given you the two cases so that you can see how the courts deal with them."

In these circumstances, we are inclined to overrule the exception.

Another thing which seems somewhat serious is this: The decedents were that day drawing sand from the south over the railroad to the north, and had made previous trips. The plaintiff was allowed, against objection, to prove that on the previous trips the decedents had stopped and looked and listened before crossing the railroad. It was offered and admitted as corroborating the evidence of witnesses who testified to the stopping just before the accident by showing that the deceased brothers were accustomed to use care. We have no doubt this testimony was irrelevant, and improperly received. But we think the error was harmless. The fact that the decedents did stop to look and listen, and at the place above mentioned, before crossing the track at the time of the accident, was clearly proven, and not disputed, as counsel for plaintiff in error conceded upon the argument. The only question raised here upon this subject is whether the decedents should have stopped after they got by the obstructions to their sight, and just before coming upon the track, when they got in range, to look up the track to the northeastward.

It is also assigned as error that the judge refused to "set aside the verdicts because they were contrary to the preponderance of the evidence." It has been often said by this court that it will not review the action of the lower court in its disposition of a motion for a new trial or other matters addressed to its discretion. But we have held that for a refusal to exercise its discretion upon a motion of which it should take cognizance, a writ of error will lie. The ground on which this assignment of error is supported in argument is that the court would not consider, for instance, the reasons urged for mitigation of damages. But the fact remains that the court did entertain

the motion, and did consider the question whether the damages were excessive. There is nothing to show that it did not consider the reasons urged for thinking the jury had not done its duty in respect of mitigating them. In denying the motion the learned judge said, upon this subject, that he could not say whether the jury had given due attention to his instruction that the damages should be mitigated, if they found the decedents had been guilty of contributory negligence; and in respect to the measure of damages he said that he would not allow a recovery so excessive as to shock the intelligence, the conscience, of the court. We cannot enter upon an estimate of the weight which the trial judge should have given to the reasons urged for or against the motion. To do so would be to say, in effect, that the decision of such motions is open to review—a proposition directly contrary to what we have repeatedly held and is everywhere the rule in federal courts.

There are some minor questions involved in the larger ones which we have considered. We have looked into them, but have not found them grave enough to require independent discussion. What we have said covers all that are material.

The court correctly charged the jury upon all the pertinent questions of law with much fullness and particularity, and many of the requests of the defendant for instructions, the refusal of which is complained of, were in substance given to the jury. Others we have already considered.

Perceiving no serious error, we conclude that the judgment should be affirmed.