## TOSH et al. v. WEST KENTUCKY COAL CO.

(Circuit Court of Appeals, Sixth Circuit. June 14, 1918.)

No. 3094.

1. INJUNCTION ⚎231—JUDGMENT FOR CONTEMPT—JOINT DEFENDANTS.
   A judgment adjudging two persons charged and tried together guilty of contempt for violating an injunction, although by separate acts, may be reviewed as to both on a single writ of error.

2. INJUNCTION ⚎218—ACTS CONSTITUTING CONTEMPT—VIOLATION OF INJUNCTIONAL DECREE.
   Persons amenable to an injunctional decree are subject to proceedings for contempt for its violation, without regard to the lapse of time since the decree, especially where the proceedings are criminal in character.

3. INJUNCTION ⚎228—PERMANENT INJUNCTION—PERSONS CONCLUDED.
   A decree in a strike suit enjoining defendants "and all other persons whatsoever who may have acquired notice, information, or knowledge of this judgment" from interfering by threats, violence, or intimidation with complainant's employés binds persons having notice who, although not parties, were in privity with the defendants, but persons not parties nor

⚎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

privies, who ten years later took part in another and unrelated strike as members of the same labor union are not amenable to such decree, although served with notice.

In Error to the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Proceedings for contempt by the West Kentucky Coal Company against Sam Tosh and George Overby. Judgment against defendants, and they bring error. Reversed.

Henson & Taylor, of Henderson, Ky. (W. O. Smith, of Central City, Ky., and Luke Teague, of Madisonville, Ky., of counsel), for plaintiffs in error.

H. D. Allen, W. T. Harris, and H. D. Allen, Jr., all of Morganfield, Ky., and Edmund F. Trabue, John C. Doolan, Attilla Cox, and W. W. Crawford, all of Louisville, Ky., for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

PER CURIAM. Defendant in error, as complainant in a bill in equity, filed during a strike affecting its employés in its mining business, and growing out of an attempt to unionize its mines, obtained in November, 1907, a final decree enjoining the defendants therein and "all other persons associated or connected with them or under their authority, or direction or control, and all persons whatsoever, who may have acquired notice, information or knowledge of this judgment * * * from in any manner interfering with, molesting, hindering, obstructing, or stopping any of the business of complainant, * * * or its agents, servants, or employés, in the operation of its property or business at any of the mines or upon any of the properties" of complainant in certain counties named, and from compelling or inducing (or attempting to do so) any of complainant's employés by threats, intimidation, force, or violence to refuse or fail to do their work, or to discharge their duties as such employés, or to leave its service, or from in any manner interfering with, molesting, or hindering any of such employés, and from preventing or attempting to prevent any person or persons by threats, intimidation, force, or violence from entering or continuing in complainant's employ, as well as from other means of violence, interference, or intimidation set up.

Plaintiffs in error were not parties to that action. A certified copy of the decree was served on each of the plaintiffs in error in April, 1917, and May, 1917, respectively—thus between nine and ten years after entry of the final decree. On June 2, 1917, the Coal Company, upon affidavit of its general superintendent, accompanied by affidavits of other parties, obtained in the court below an order to show cause why plaintiffs in error (and others) should not be punished for contempt of court in violating this injunction. Later plaintiffs in error were, upon trial by jury under Clayton Act Oct. 15, 1914, c. 323, § 22, 38 Stat. 738 (U. S. Comp. Stat. 1916, § 1245b) convicted of contempt of court, in violating the injunction, by knowingly attempting, the one by threats of violence, to induce and compel a certain employé of the Coal Company to refuse or fail to do his work as such employé, the

other by threats and violence to induce another employé of the Coal Company to leave its service and employment. Plaintiffs in error were sentenced each to 60 days' imprisonment and each to the payment of a substantial fine—both fines being ordered paid to the Coal Company, except that in the case of one of them a portion was ordered paid to the subject of the alleged violence. This trial and conviction were had against the contentions of plaintiff in error, seasonably urged, that they were not amenable to the injunction, and that neither the facts alleged nor the evidence offered constituted an offense or authorized their conviction. This writ was brought to reverse that judgment.

[1] 1. Plaintiffs joined in a single writ of error. Motion is made to dismiss on the ground that review can be had only on separate writs. Separate writs are required where judgments in wholly separate suits are sought to be reviewed (Brown v. Spofford, 95 U. S. 474, 484, 24 L. Ed. 508), even though the cases were consolidated for trial (L. & N. Ry. Co. v. Summers [C. C. A. 6] 125 Fed. 719, 720, 60 C. C. A. 487), and even where the cases grew out of one accident (Waters-Pierce Oil Co. v. Van Elderen [C. C. A. 8] 137 Fed. 557, 562, 70 C. C. A. 255). In two of the cases cited jurisdiction was retained in the absence of objection by defendant in error. In the third a motion to dismiss, made after the lapse of the 6 months' period for issuing writ, was overruled because of stipulation by counsel that the writs of error might be considered and treated as a single writ, the record printed and treated as one and the same, and the causes argued as one.

In the instant case, while the motion to dismiss was made about 4 months after judgment, it was not made until more than 4 months after settlement of the joint bill of exceptions, nor until more than 3 months after filing præcipe calling for copy of the proceedings as to each plaintiff in error, accompanied by an indorsement of opposing counsel, "Service of this præcipe is accepted and we agree that the above record will be sufficient," nor until more than 2 months after the filing in this court of the printed transcript. The proceeding in this case was joint throughout, both as respects affidavit for arrest, order to show cause, trial, verdict, and judgment entry; the judgment as to each respondent being merely separately paragraphed. Moreover, it has been the practice of this court to review judgments, not only in criminal cases proper, but in proceedings for criminal contempt, by joint writ of error, as in Foster v. United States, 178 Fed. 165, 101 C. C. A. 485; Sona v. Aluminum Castings Co., 214 Fed. 936, 131 C. C. A. 232; Kalamazoo Co. v. Proudfit Co., 230 Fed. 120, 144 C. C. A. 418. The motion to dismiss is overruled.

[2] 2. We see no merit in the contention that the injunctional decree in the equity suit afforded no basis for contempt proceedings for its violation against parties amenable to it, upon the ground that the decree finally adjudicated the rights of the parties to it, or because of mere lapse of time since its rendition. The purpose of the decree was to restrain—it looked to the future. Instances of contempt proceedings for violations of final decrees are numerous; it is enough to refer to Waterman v. Standard Drug Co., 202 Fed. 167, 120 C. C. A. 455, and Kalamazoo Co. v. Proudfit Co., 230 Fed. 120, 144 C. C. A.

418 (both decisions of this court) and Clay v. Waters (C. C. A. 8) 178 Fed. 385, 101 C. C. A. 645, 21 Ann. Cas. 897. Analogy is found in Worden v. Searls, 121 U. S. 14, 7 Sup. Ct. 814, 30 L. Ed. 853, where the right to maintain proceedings for violation of preliminary injunction was expressly declared, notwithstanding the reversal of the final decree with direction to dismiss the bill. Nor is the instant case analogous to Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 451, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, where it was held that the settlement of the main case settled contempt proceedings between the parties. Indeed, it was there said that such settlement could not affect prosecution for criminal contempt; and the proceedings in the instant case were criminal in character, so far as they sought and so far as they imposed punishment for the public wrong involved in a contemptuous disregard of the authority of the court, as distinguished from private relief to the party. Bessette v. Conkey, 194 U. S. 324, 329, 24 Sup. Ct. 665, 48 L. Ed. 997; Kalamazoo Co. v. Proudfit Co., supra.

[3] 3. Were plaintiffs in error amenable to the injunction in the equity suit? The acts now complained of were committed in the course of another alleged effort to unionize the mines. One of the plaintiffs in error was an organizer for the union; both had been discharged by the company, one about May 1, 1917; the other had been discharged 2 or 3 months earlier for joining the union. The company was within its rights in refusing to employ union men and in discharging those who joined the union, and was entitled to protection against unlawful invasions of such rights. Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 38 Sup. Ct. 65, 62 L. Ed. 260, Ann. Cas. 1918B, 461. Plaintiffs in error had a right, by peaceful methods, to persuade others not to work in a nonunion mine, but had no right to attempt such result by violence or intimidation. Hitchman Coal & Coke Co. v. Mitchell, supra; Sona v. Aluminum Castings Co., supra. (The right of an employer to enjoin attempts by peaceful methods to induce its employés to violate their contracts not to remain in his employ after joining the union is not involved here.) If plaintiffs in error were amenable to the injunction, the evidence would sustain their conviction.

The inclusion of the words "and all other persons whatsoever, who may have acquired notice, information, or knowledge of this judgment," would not alone operate to make them parties to the litigation and the resulting decree. It is not even claimed that up to the time of the decree they were in privity with the defendants. Nevertheless, had the strike which was the occasion of the decree been still in progress, plaintiffs in error, by committing the acts of which they were found guilty, after actual knowledge of the injunction, would have rendered themselves amenable to it and liable for its violation (In re Lennon, 166 U. S. 548, 554, 17 Sup. Ct. 658, 41 L. Ed. 1110; Sona v. Aluminum Castings Co., supra); for we see no reason why the rule laid down in the Lennon Case (hereafter referred to) would not apply to a final decree as well as to a preliminary injunction or restraining order. But unless the subject-matter of the suit in which the injunction was issued

still existed, that is to say, unless the condition out of which the alleged contempt grew was in substance the strike condition of nearly 10 years earlier, a mere continuation of it, or unless plaintiffs in error, in the commission of the acts charged against them in 1917, can be said to have been the associates of or to have represented the defendants in the injunctional decree, we think they cannot be held amenable to the old injunction. We are not cited to, nor have we found, authority supporting a contrary view. The Lennon Case does not, to our minds, lend such support. In that case the strike against the Ann Arbor Railroad was still on, accompanied by refusal on the part of the other railroads defendant to haul Ann Arbor freight, and respondent was himself an employé of the Lake Shore road and within the express terms of the injunctional order. The court there said:

"To render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice. High on Injunctions, § 1444; Mead v. Norris, 21 Wis. 310; Wellesley v. Mornington, 11 Beav. 181."

In Ex parte Lennon, 64 Fed. 320, 323, 12 C. C. A. 134, the decision of this court, affirmed by In re Lennon, supra, there were cited in support of a similarly stated proposition Wellesley v. Mornington, supra, Rorke v. Russell, 2 Lans. (N. Y.) 242, and High on Injunctions, § 1435. Presumably the language used by each court had relation to the facts of the case. None of the references cited by either court are important, except to the proposition that one having knowledge of an injunction may be guilty of contempt in disobeying it, notwithstanding there was no service or a defective service.

In Employers' Teaming Co. v. Teamsters' Joint Council (C. C.) 141 Fed. 679, cited by defendant in error, where a similar proposition to that announced in the Lennon Case was asserted, the strike was still in progress. While a strike is actually on, it frequently is necessary to the protection of property and business affected to reach persons not parties to the suit, all of whom could in no other way be brought in, by reason frequently of their large numbers and because of conditions of emergency. But such considerations are normally inapplicable to a new condition arising 10 years later.

4. Does it appear that the condition existing in 1917, when the alleged violation of the injunction was committed, was in substance the strike of 1907, or that plaintiffs in error were so far associated with, or so far represented, the defendants in the injunctional decree, as to make them amenable to it by reason of their acts in 1917? We find nothing in either allegations or proofs indicating that the strike of 1907, or the interference with the business of complainant which formed the basis of the injunction, had continued subsequent to the decree made in that year, or that the conditions existing in 1917 were anything more than a new and independent effort to unionize the mines. The most which can be said is that there was danger of a strike or of serious troubles if agitation was permitted, or interference with the company's employés tolerated, and that the issue of union or nonunion mine was the same in 1917 as it had been in 1907.

The defendants in the equity suit were made such in their individual capacities only. The only allegations in the affidavit initiating the con‧tempt proceedings by which it was attempted to connect plaintiffs in error, and their actions, with the original suit and the defendants therein, are that defendants in that suit were at the time members of the United Mine Workers of America, and were acting on behalf of that "organization and their associates therein in all matters charged against them" in the bill of complaint; that that organization "has from time to time added to its membership, and for some time past" plaintiffs in error and others "have been members of said organization, and associated with the individual defendants named in said original bill of complaint and in the decree heretofore rendered in this cause," and that plaintiffs in error and others "have co-operated and confederated with said individual defendants, or acted in the room and stead of said individual defendants, in carrying out the purposes of said organization and said individual defendants, and in attempting, as set forth in the original bill of complaint, to shut down the mines and plant of the plaintiff, and to destroy its property and its earning capacity, unless this plaintiff would accede to the demands of said organization, and of said individuals composing it, and discharge from its employment all of its said employés who were not members of said organization, and refuse to employ in its said mines and plant any person except members of said organization"; that "for several months last past said United Mine Workers of America, the organization aforesaid, have become very active in their endeavors to induce the workmen employed by plaintiff in its mines aforesaid to strike, unless plaintiff would agree with said organization to employ only its members in and about its said mines and plant," and through plaintiffs in error, and others named, "from time to time, have threatened the said workmen that unless they left plaintiff's employment, when said union should, as said union would, call a strike of plaintiff's workmen," plaintiff's employés would be killed, and that other threats of similar character have been made by plaintiffs in error and others named from time to time, and prior to the notice of decree before referred to; that the threats made by the members of the union had caused excitement and alarm in the neighborhood of plaintiff's mines, prompting plaintiff to serve printed and certified copies of the decree in the equity suit upon a large number of prominent members (including plaintiffs in error) of the union residing in the Western district of Kentucky, who were alleged to have made threats against and to have intimidated plaintiff's workmen. Plaintiffs in error admitted their membership in the union, asserting, however, their innocence of the misconduct charged against them, including a denial of co-operation or confederation with the defendants in the equity suit, or an acting in their stead in carrying out the alleged purposes of the organization, and of such defendants, in attempting to shut down plaintiff's plant and mines, or to destroy its property and earning capacity, unless the company would agree to employ only union men. The union was not proceeded against, perhaps because not incorporated.

It is not charged that plaintiffs in error were employés of the Coal Company at the time of the strike involved in the injunction suit, or that they were in any way connected with the strike, or with the committing of any of the acts which were the occasion of the suit in which the decree was entered. The implications are all to the contrary. It is not charged, nor does it appear, that either plaintiff in error was then a member of the union. There was no evidence on the trial that the defendants in the injunction suit had anything to do with the conditions in 1917 (the offer of plaintiffs in error of testimony tending to negative such connection was rejected), or that plaintiffs in error had at any time any actual relations with the real defendants in the injunction suit; nor do we construe the affidavit initiating the contempt proceedings as in substance charging, in this respect, more than that the union was behind the actual strike of 1907, as well as the threatened strike in 1917, and that the defendants in the injunction suit, as well as the plaintiffs in error here, were members of the union and acting in its behalf, the former in the proceedings in 1907 which were the subject of the decree, the latter in the activities of 1917. Indeed, the contention of defendant in error, as stated in the brief of its counsel, is that plaintiffs in error were covered by the decree, "not only because they were members of the union referred to in the bill and decree [in fact the decree makes no mention of the union, directly or indirectly] and assisting in doing the things forbidden by the decree, but because they were doing the things which the decree forbade 'all persons whatsoever' to do."

In our opinion, the renewed efforts of the United Mine Workers to unionize the mines, and the connection of plaintiffs in error with such efforts, were not enough to so tie the conditions of 1917 to those existing in 1907 as either to make the former but an extension of the strike of 1907, or as to make plaintiffs in error, with respect to their acts in 1917, the associates or representatives of the defendants in the decree of 1907. We have no occasion to consider what the situation would have been, had the United Mine Workers been a party to the injunction suit, or had the defendants therein been made such in an official capacity, as representing the union, as was the course taken in Hitchman Coal & Coke Co. v. Mitchell, supra. The conditions in 1917 may or may not have been enough to justify an injunction. If they were, it is to be presumed one could have been had. There has been no adjudication to that effect, on supplemental proceedings or otherwise.

The conviction of plaintiffs in error by the jury was made to depend solely upon their making the threats or committing the acts of violence charged against them, with knowledge that the employé so threatened or subjected to violence was in the company's service or employment, and with intent to prevent such employé from continuing therein or from performing his services in such employment, as the case may be. If the injunction of 1907 is of its own force applicable to new conditions in 1917, no reason appears why it would not be applicable to conditions 20 years, or even 30 years, after the decree is entered, provided the union which was back of the attempted union-

izing of the mines in 1907, out of which the injunction grew, was also back of the new and independent attempt to unionize the mines 20 or 30 years later. Under such circumstances the recognition of the power of summary prosecution for contempt, without previous adjudication that the existing conditions are such as to justify injunction, especially where the remedy is sought to be exercised, not through the public officers, but by the employer alone, and primarily on behalf of its private interests, is fraught with great possibilities for oppression.

Under the circumstances shown here, to hold plaintiffs in error amenable to contempt for violating the injunction made nearly 10 years before would extend the rule of the Lennon Case, as well as of the adjudications generally, far beyond any decision which has come to our attention. To our minds such extension is unwarranted upon principle, as well as unsupported by authority.

The judgment of the District Court must be reversed, and the record remanded to that court, with directions to dismiss the contempt proceedings.