AMERICAN CENT. LIFE INS. CO. v. AMERICAN TRUST CO.

(Circuit Court of Appeals, Sixth Circuit. April 6, 1925.)

No. 4224.

1. Appeal and error ⬅15 — Separate judgments consolidated for trial, and by stipulation considered as one for purpose of review, may be reviewed on one writ of error.

In separate actions on insurance policies consolidated for trial, where beneficiaries were represented by same guardian and by order of District Court, made upon stipulation of counsel, cases are considered as one for purpose of review and as requiring but one bill of exceptions, one record, one writ of error, etc., the Circuit Court of Appeals will exercise jurisdiction to review the judgments.

2. Insurance ⬅146(3)—Ambiguous words in insurance policy construed most strongly against insurer.

Ambiguous words used by insurer in policy prepared by its attorneys, officers, or agents, must be construed most strongly against it.

3. Insurance ⬅146(2)—Each word of policy presumed to have purpose.

Each word of an insurance policy must be presumed to have a purpose and be given effect.

4. Insurance ⬅529 — Life policy, containing double indemnity benefit in case of accidental death, held to cover accidental death within one year of policy date; "premium-paying period."

Life policy, containing disability benefit provision waiving payment of premium during disability of insured and containing double indemnity benefit clause which provided, in case of accidental death, payment of double face amount of policy on proof that death of insured occurred "during the premium-paying period and not less than one year from the date thereof," held to cover accidental death within one year of date of policy; the words "premium-paying period" relating to period in which insured was not relieved from payment of premiums under preceding disability benefit provision.

5. Courts ⬅99(1)—That judge adopted construction placed on contract by predecessor, without personally passing on contract, held no ground of error.

Contention of plaintiff in error that trial judge, in construction of insurance policy, adopted construction of his predecessor without himself personally passing upon the contract, held without merit; such judge not being required to reject his predecessor's construction, and the important question being correctness of construction ultimately adopted.

6. Appeal and error ⬅1056(5)—Rejection of testimony, in action tried before court, held not ground of error, where all testimony was taken and appears in record.

In action on insurance policies tried before court without jury, where testimony was all taken and appears in record on review, the rejection by trial court of certain expert evidence held not error.

In Error to the District Court of the United States for the Middle District of Tennessee; John J. Gore, Judge.

Separate actions on insurance policies by the American Trust Company, as guardian, against the American Central Life Insurance Company, consolidated for trial. Judgment for plaintiff (5 F.[2d] 69), and defendant brings error. Affirmed.

Thomas J. Tyne, of Nashville, Tenn. (Tyne, Peebles & Tyne, of Nashville, Tenn., and Cox, Welliver & Walsh, of Indianapolis, Ind., on the brief), for plaintiff in error.

T. T. McCarley, of Nashville, Tenn. (Harry A. Luck and J. G. Stephenson, both of Nashville, Tenn., on the brief), for defendant in error.

Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error (hereinafter called defendant or the insurer) issued three separate policies of insurance of $5,000 each upon the life of Edward D. Moseley, payable at his death. Two of the policies were dated May 6, the third May 27, 1921. Each policy named as beneficiary a different child of the insured. The policies were identical except as to the beneficiary, and, as thus far stated, were ordinary life insurance policies regardless of the cause of death, except as to suicide within two years. To each policy, however, was attached a so-called "total and permanent disability benefit" rider, which, in consideration of an annual premium of $14.10, included in the annual premium of $207.30, stated in the policy, provided in substance that if, while no premium is in default, the insured, before attaining 60 years, becomes so disabled as to be prevented (and presumably permanently) from work for compensation or following any gainful occupation, and continues so disabled for at least 60 days, the insurer will waive the payment of each premium thereafter becoming payable under the terms of the contract, and will pay the insured after six months a monthly income of $50 during the continuance of such disability or until the face of the policy becomes payable. The disability benefit premium ($14.10) was to cease when the insured became 60 years of age, the total premium to be thereupon reduced by that amount. The "disability benefit" rider was immediately followed by a so-called "double indemnity benefit" rider (printed as part of the sheet which contained the "disability benefit" provision), declaring that "the company will pay double the face amount of this policy to the beneficiary named therein upon its surrender accompanied by due proof that the *death* of the insured *occurred during the premium-paying period and not less than one year from the date thereof*,[1] and before attaining age 65, in direct consequence of bodily injury effected solely through exter-

nal, violent and accidental means, and that such death occurred within 90 days after such injuries were sustained; provided, that no premium is due and unpaid or has been waived under any disability provision and that this policy is then in full force." The "double indemnity" premium ($10.80) was also included in the total premium of $207,30, and was to cease when the insured became 65 years of age; the total premium thereafter to be reduced by that amount. The insured died December 3, 1921, before attaining the age of 65, in direct consequence of bodily injuries effected solely through external, violent, and accidental means, and within 90 days after the injuries were received and while the policy was in full force and effect, and while no premiums were due and unpaid. No premium had been waived under the disability provision.

[1] Defendant admitted liability for the face amount of each policy ($5,000), but denied double liability upon the ground that the death occurred *within one year from the date of the policy.* Separate suits upon the respective policies were consolidated for trial, and judgment rendered for double liability. The controversy relates solely to the construction of the limitation clause "during the premium-paying period and not less than one year from the date thereof"; that is to say, whether this clause means, as defendant contends, within one year from the date of the policy, or whether, as the District Court concluded (trial by jury was waived), the words "premium-paying period" meant the period in which the insured was not relieved from the payment of premiums under the preceding "disability benefit" provision.[2]

We think the District Court rightly construed the double indemnity contract, and we are content to base this conclusion substantially upon the course of reasoning adopted by then District Judge Sanford in his memorandum opinion overruling the demurrer to the declaration. 5 F.(2d) 69.

[2] It seems very clear that the rider in question does not unambiguously exclude the

---

[1] All italics in this opinion ours.

[2] The three beneficiaries were represented by the same guardian. By order of the District Court, made upon stipulation of counsel, the three cases are considered as one for the purpose of review, and as requiring but one bill of exceptions, one record, one writ of error, etc. We think it our duty to exercise jurisdiction to review the judgments. Brown v. Spofford, 95 U. S. 474, 485, 24 L. Ed. 508; Louisville Co. v. Summers (C. C. A. 6) 125 F. 719, 720, 60 C. C. A. 487; Tosh v. Coal Co., (C. C. A. 6) 252 F. 44, 46, 164 C. C. A. 156, 15 A. L. R. 376.

beneficiary's right to double indemnity from cases where death shall occur within less than one year from the date of the policy. On the contrary, the words "not less than one year from the date thereof" grammatically relate to the immediately preceding "premium-paying period," and not to the word "policy," which occurred more than thirty words before. To say the least, we think a reading of the entire paragraph would not suggest to the unskilled policyholder that the double indemnity for which he was in terms paying a special premium, in addition to what would otherwise be the policy premium, had no application during the year for which such payment was being made;[3] and we think the natural impression to the contrary is not disturbed by the fact that separated by at least 25 words from "thereof" the word "therein" (following "named") and "its" (preceding "surrender") related to "policy" and not to "premium-paying period," which had not up to that time occurred in the double indemnity rider. Had it been the intention to exclude double liability during the first year of the policy's existence, we think the insurer would naturally have said "not less than one year from the date hereof" or "from the date of this policy." At this point, it is enough to say that the intention to limit double indemnity to cases of death in a subsequent year was not unambiguously expressed. That being so, the rule is fundamental that the words used by the insurer, in a policy prepared by its attorneys, officers, or agents, must be construed most strongly against it. Liverpool Ins. Co. v. Kearney, 180 U. S. 132, 136, 21 S. Ct. 326, 45 L. Ed. 460. We are not impressed by defendant's contention (in effect) that even if the word "thereof" relates to "premium-paying period," a construction that the double indemnity does not apply during the first policy year is sustained by the testimony regarding insurance terminology, which, as rightly construed, we think means only that the "premium-paying period" begins with the inception of the insurance contract.[4] Indeed, except as specifically provided by the

[3] This fact is here cited only as affecting the natural construction of the rider, and wholly apart from the question of the legal effect of such payment later referred to. As Judge Sanford said: "Manifestly as the accident premium was paid, as is thus recited, for the entire first year liability therefor, is not to be denied *unless plainly required by the clear construction of the language used.*" See Insurance Co. v. Drach, 101 Pa. 278, 283.

[4] The premiums were paid May 27, 1921.

disability rider, death, in order to create liability, must occur during the premium-paying period. But it does not follow that the *"premium-paying period"* is synonymous with *"date of policy,"* which would be the required meaning if the contention of defendant we are now considering is to be accepted; and it is equally clear that "premium-paying period" is not synonymous with "beginning of premium-paying period."

[3] Again, it is a well-settled rule of construction that effect must be given to each word, and that each word must be presumed to have a purpose. Yet, if defendant is right in its construction of the contract, the words "during the premium-paying period" are entirely superfluous; for if those words were omitted, and defendant's construction of the time limitation is correct, recovery of double indemnity would be denied if premiums were not seasonably paid—this by virtue of the concluding clause *"provided that no premium is due and unpaid or has been waived under any disability provision and that this policy is then in full force."*

[4] But even more important than this, were it not for the words "during the premium-paying period," contained in the double indemnity rider, and the construction placed thereon by the District Court, the literal language of the proviso just quoted would forbid double indemnity *in any case* where a premium had been waived under the disability benefit rider, which, as already stated, immediately preceded the double indemnity rider—even though payment of premiums had been resumed as provided by the first mentioned rider.

It thus seems clear that the words "premium-paying period" had an important meaning, wholly apart from date or life of the policy; and we are constrained to agree with the District Court that the words "and not less than one year from date thereof" were intended to refer (as on their face they grammatically would refer) to the immediately preceding phrase "during the premium-paying period"; and that this latter expression should be considered in connection with the accompanying double disability provision, which expressly provides for waiver of premium payments during total disability and for cessation of such waiver when the assured becomes able to "perform any work for compensation or profit, or to follow any gainful occupation"; and thus by necessary implication for a return to premium paying. We print in the margin an excerpt from Judge Sanford's pertinent state-

ment of the results of the construction adopted by him.[5]

Plaintiff invokes the principle that where a contract of insurance is issued for a premium charged for a definite time, liability for indemnity will attach, notwithstanding the policy contains a provision that the insurer will not be liable for death occurring during such period (Summers v. Fidelity Association, 84 Mo. App. 605, 610), and cites the fact that in the instant case the double liability premium for the first year was paid.

As against this contention, defendant invokes New York Life Insurance Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789, which holds that a policy of insurance for life which stipulates for the payment of an annual premium by the assured during the continuance of the policy, with a condition to be void on nonpayment, is not an insurance from year to year, like a common fire policy; but that the "premiums constitute an annuity the whole of which is the considera-

tion for the entire insurance for life; and the condition is a condition subsequent, making, by its nonperformance, the policy void."

On the other hand, the policies here in suit contain this express provision: "The first year's insurance under this policy is *term insurance,* purchased by the whole or part of the premium to be received during the first policy year, and the policy shall be valued according to its terms and the laws of the state of Indiana." Defendant offered testimony that the words "first year's insurance" were inserted in the policy merely for the purpose of determining the reserve value and "in no way affect the right or interest of the insured or the company in their relations to each other." It also appears that by calling the first year's insurance "term insurance" the required reserve to be maintained by the insurer would be reduced by nearly one-half. There seems to be force in plaintiff's contention that the instant case is not controlled by the Statham case; but in view of the conclusion otherwise reached we find it unnecessary to pass upon that question.

[5] There is no merit in defendant's complaint that the trial judge, who had succeeded Judge Sanford, adopted the latter's construction of the contract without himself personally passing upon it. Granting that the trial judge had the legal right to reject his predecessor's construction (Messinger v. Anderson, 225 U. S. 436, 32 S. Ct. 739, 56 L. Ed. 1152), he was not bound to do so. The record does not indicate that he disagreed therewith. The important question here relates only to the correctness of the construction ultimately adopted.

[6] Nor do we find any merit in defendant's complaint of the rejection by the trial court of some of the expert evidence offered as to the meaning of certain insurance terms. The testimony was all taken and is in the record. Its formal admission could not change the result otherwise arrived at.

The judgment of the District Court in each of the three cases is affirmed.

---

[5] "Under the disability benefit provision, the insured was relieved from the paying of premiums upon incurring a disability, as therein defined, and so long as such disability continued. The period in which there was no such disability was therefore the 'premium-paying period'; while that on which a disability existed and continued would not be a 'premium-paying period.' So construed, the double indemnity benefit would not apply if accidental death occurs during a period of the insured's disability, which would not be a 'premium-paying period'; in which there would probably be an increased likelihood of accident, and in which the insured would not only pay the double indemnity premium, but would also receive a monthly income from the Company. And further, if the phrase 'not less than one year from the date *thereof*' relates to the premium-paying period, then it would also seem to have been intended that in case a disability once incurred thereafter, terminated, and the premium-paying period was thereby reinstated, the double indemnity benefit would still not apply if accidental death occurred within one year after the resumption of the premium-paying period, while there would still probably be an increased likelihood of accident."