BOWLES, Administrator, O. P. A., v. LOVEMAN.

No. 5335.

Circuit Court of Appeals, Fourth Circuit.

Feb. 9, 1945.

David London, Chief, Appellate Branch, O.P.A., of Washington, D. C., (Thomas I. Emerson, Deputy Administrator for Enforcement, and Fleming James, Jr., Director, Litigation Division, both of Washington, D. C., and S. L. Cohen, Atty., and Paul Ross, Regional Litigation Atty., both of New York City, and Francis K. Murray, Atty., O.P.A., of Baltimore, Md., on the brief), for appellant.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal by the Administrator of the Office of Price Administration from a decree setting aside in part a suspension order issued by a hearing commissioner of that office and approved by a hearing administrator. The decree was entered pursuant to the power to review such orders vested in the District Courts by section 108 (e) of the Stabilization Extension Act of 1944, adding subsection (g) to section 205 of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 925(g).

646

The suspension order was made upon a finding that one Frank E. Loveman, a retail shoe dealer of Baltimore, Md., had violated general ration order No. 8 in various particulars including the purchase and use of counterfeit ration coupons in carrying on his business. It forbade Loveman to receive or handle rationed shoes during the period of suspension, which was to continue from September 11, 1944, the date of the order issued by the hearing commissioner, until the end of shoe rationing, and forbade other persons to transfer rationed shoes to him or to permit him to handle rationed shoes for them during this period. The decree below, which was entered November 14, 1944, limited the suspension order to December 31, 1944, the date upon which the Second War Powers Act, 50 U.S.C.A.Appendix § 631 et seq., which had not then been extended, was due to expire. It also vacated the part of the order which prohibited other persons from transferring rationed shoes to Loveman or permitting him to handle rationed shoes for them during the rationing period. Certain other minor changes were made in the order, which was changed to become effective on November 14th, but these are not material to consideration here. On December 20, 1944, the Second War Powers Act, under which the suspension order was entered, was amended, 50 U.S.C.A.Appendix § 645, so as to substitute December 31, 1945, for December 31, 1944, as the date of expiration of the powers thereby conferred.

■■■ The principal question presented for our consideration by the appeal is whether the order of the Administrator suspending Loveman from dealing in rationed shoes for the duration of rationing was a legal and valid order or whether the court below was correct in modifying it so as to expire with the date currently fixed for the expiration of the powers granted by the Second War Powers Act. There can be no question, of course, but that the validity of the order depends upon the powers granted the Administrator by the Act of Congress under which it was entered and that it would have no binding force after the expiration of the powers granted by that act; but it by no means follows that the Administrator may not make a suspension order coterminous with the period of rationing as that period may be extended from time to time by act of Congress. As pointed out in Steuart & Bro. v. Bowles, *322 U.S. 398, 64 S.Ct. 1097*, the entry of

such suspension orders is a proper means to insure the efficiency of rationing and the enforcement of rationing regulations in the distribution of commodities necessary to the war effort in a period of war time scarcity. The purpose of the orders is to make sure that such commodities are handled by persons who respect and abide by the necessary war time regulations and restrictions; and this purpose will be in large measure defeated if exclusion orders must expire with the period to which Congress has currently limited the grant of powers to the Administrator, without regard to the subsequent extension of these powers.

Unless our domestic economy is to be wrecked by inflation during war time, it is perfectly clear that rationing must be continued while the war lasts and probably for a considerable period following the termination of actual hostilities. Every informed person understands this; but, to guard against possible abuse of power, Congress has granted to the executive for limited periods of time the powers under which rationing is exercised, intending, as everyone knows, to extend these powers from time to time as necessity may require, and reserving to itself the power to terminate them at any time by concurrent resolution. Many suspension orders must be entered to preclude the handling of rationed commodities by persons who cannot be trusted to handle them properly; and there is no reason why a person who has demonstrated that he is not a proper person to handle them should not be thus excluded for the entire period of rationing. There is nothing in the statute which forbids the entry of such order; and we know of nothing in law or in reason which forbids it.

The task of the Administrator in enforcing rationing, difficult at best, will be greatly complicated, if those who will not observe rationing regulations, and have shown themselves willing and ready to resort to fraud to evade them, cannot be excluded from handling rationed commodities except for short periods of time; and no such limitation should be placed upon the powers. In the case at bar, for example, it would be absurd that Loveman, after having been found guilty of the grossest frauds on the regulations, should be excluded from dealing in the rationed commodity only from November 14th to December 31st, or that the Administrator should have to conduct further proceedings to exclude him. It is more reasonable to think that Con-

gress intended that the Administrator should conduct rationing under the statute and make orders with respect thereto on the assumption that it was to continue as long as the necessity which called it forth should continue to exist.

As indicated above, however, the exclusion order is operative only if rationing continues. If rationing should be terminated by executive order, by joint resolution of Congress or by the expiration of powers under the War Powers Act, the exclusion order would terminate by its express terms as well as because of the termination of the underlying grant of power. It is said that the period of exclusion is thus left uncertain, vague and indefinite, and that the order is void for that reason. We do not think so. It definitely excludes for the period of rationing; and the case is one for the application of the maxim, id certum est quod certum reddi potest. The identical question was before Judge Forman in Illario v. Bowles, D.C., 57 F.Supp. 404, 405, and we agree with his disposition of it, which was as follows: "Complainant further contends that the suspension period is uncertain, vague and indefinite. Quite the contrary is the fact. It expires at 11:59 P. M. on the date of the expiration of the rationing of gasoline. The provisions of the act under which the suspension order was issued terminate under the terms thereof on December 31, 1944 or upon the date of a proclamation by the President, or upon the date specified in a concurrent resolution by the two Houses of Congress, declaring that the further continuance of the authority granted by this Act is not necessary in the interest of the national defense and security, whichever date is the earliest. 50 U.S.C.A.Appendix § 645. While this provision does not fix a set date of expiration, it does designate the termination of the rationing period with reasonable certainty."

A suspension order, after all, is but a specific application of the rationing policy embodied in the general rationing orders; and there is no more occasion in the one case than in the other to hold that the order must expire on the date fixed by existing legislation for expiration of the war power granted by Congress. No one would contend that a general rationing order is so limited by the existing power under which it is adopted that it is not extended without further action when the power is extended; and there is no reason why the same rule should not apply in the case of suspension orders, which it must be remembered, are not adopted by way of punishment but as means of channeling rationed commodities to effectuate the purposes of the statute. If rationing is to continue, as it unquestionably should, so long as the need for it exists, there can be no justification for limiting the power of the Administrator so as to preclude his discharging his duties effectively; and, if he is to discharge them effectively, he should have the power to suspend for the period of rationing those dealers in rationed commodities whose activities are a menace to rationing. Of course, whether the Administrator should make the suspension order operative for the entire period of rationing or only for a limited period is an administrative matter to be determined by him and not by the courts; but where, as here, the dealer has been guilty of gross frauds in violating the regulations, an order excluding him from dealing in the rationed commodity for the period of rationing is certainly not subject to criticism. Such a dealer should count himself fortunate to escape a prison sentence for his conduct.

And we do not think that the order of the Administrator should have been modified so as to strike out the provision which forbade other persons to transfer rationed shoes to him or to permit him to handle rationed shoes for them during the period of rationing. A regulation forbidding persons generally to transfer rationed commodities to persons who had violated rationing regulations or to permit such persons to deal in rationed commodities for them would certainly be a valid regulation in aid of rationing; and we cannot see that it is rendered invalid by being limited to a single violator. As a part of the suspension order relating to Loveman, it was an appropriate feature of that order in that it would aid in excluding him from handling rationed shoes, as it would be in large measure observed by those who might learn of it. The fact that persons affected by the order were not parties to the administrative proceeding in which it was entered is not important. Analogy is found in the case of injunctive orders, which frequently forbid action on the part of persons not parties to the suit but who are identified in some way with a party or are acting with him. Cf. Ex parte Lennon 166 U.S. 548, 554, 17 S.Ct. 658, 41 L.Ed. 1110; Chase

648

Nat. Bank v. Norwalk, 291 U.S. 431, 54 S. Ct. 475, 78 L.Ed. 894; Tosh v. West Kentucky Coal Co., 6 Cir. 252 F. 44; 28 Am. Jur. 505; note 15 A.L.R. 386. It is not necessary here to determine how the order is to be enforced against persons other than Loveman. That is no concern of his; and furnishes no ground upon which he can attack the provision. It will be time enough to consider the validity of the provision as against persons other than Loveman and how it is to be enforced against them when some one affected by it other than Loveman raises the question.

For the reasons stated, the decree appealed from will be reversed in so far as it modifies the order of the Administrator in the particulars above noted.

Reversed.