## UNITED STATES v. ZONGOS.

### Cr. No. 42308.

United States District Court
E. D. New York.
March 2, 1950.

J. Vincent Keogh, United States Attorney, Brooklyn, N. Y., George W. Percy, Jr., Assistant United States Attorney, Southampton, N. Y., of counsel, for the United States.

Henry G. Singer, Brooklyn, N. Y., for defendant.

GALSTON, District Judge.

This defendant is charged by information with the commission of crimes under three counts, in that on or about April 12, 1949, while doing business under the trade name of Amazon Packing Company, he unlawfully exported three boxes of vitamins (the exportation of one box is set forth in each of the three counts) by the use of a general export license, from the International Airport in this district by K. L. M. Royal Dutch Air Lines, consigned to individuals, one under each count, to Naples, Italy; and that he knew the exportations to be in violation of a suspension order dated December 2, 1948 (published on December 7, 1948 in 13 Fed.Reg.No. 237, pp. 7454 and 7455). The suspension order is charged in the information to have been issued according to law by the Office of International Trade of the Department of Commerce upon the consent of the defendant; and the order prohibited, so the information charges, the defendant and any firm or business in which he had a

controlling interest, from obtaining or using export licenses, including general licenses, for a period of one year from the date of said order.

To the information the defendant pleaded not guilty, and thereafter filed a motion to dismiss the information. Following argument on that motion decision was reserved, and at the opening of the trial the motion was withdrawn. Also it was stipulated that the case be tried without a jury, and the defendant executed a waiver of trial by jury.

Substantially all the facts are agreed upon, and apparently the only issue to be determined is a question of law. The defendant contends that the suspension order of December 2, 1948 was void because its termination was beyond February 28, 1949, the date of the expiration of the act pursuant to which the Office of International Trade of the Department of Commerce had issued the order; it is also contended by the defendant that the exportation of vitamins in April 1949, with or without a license, did not violate the Export Control Act of 1949, 50 U.S.C.A. War Appendix, § 2025; and finally defendant contends that the non-commercial and charitable aspects of the three shipments negative criminal intent and establish reasonable doubt as a matter of law.

The suspension order was based on a proceeding instituted by the Department of Commerce on October 5, 1948 by a letter to the Superior Packing Company, of which company the defendant was the sole proprietor, which charged the respondent with having violated Sec. 6 of the Act of July 2, 1940, 54 Stat. 714, as amended, 50 U.S.C.A. Appendix, § 701, and the regulations promulgated thereunder, in that the respondent filed certain applications for export licenses to make multiple shipments of certain gift parcels on behalf of specific donors in the United States to specific donees in Italy. These applications were charged to be false and fraudulent in that the lists of donors submitted as parts thereof were false in material respects and were known to be so by respondent. Acting with the advice of counsel, Zongos submitted a statement to the Office of International Trade that he

did not desire to contest the charges, that he waived all right to a hearing, and that he consented to the entry of an order revoking all outstanding export licenses issued to him or his company, which said order would also deny to him and his company the right to obtain or to participate directly or indirectly in obtaining or using export licenses, including general licenses, for a period of one year from the date of the order.

The order further recites that the statement made by Zongos, together with reports of investigations conducted and evidence secured by the Office of International Trade, had been submitted for review to the Compliance Commissioner for the Office of International Trade, and that he had found that such evidence shows that a substantial number of the donors listed were falsely listed and that the respondent thus violated the provisions of Sec. 6 of the Act of July 2, 1940, 54 Stat. 714, as amended, and the regulations promulgated thereunder, and the proposed suspension of license privileges for the period of one year was reasonable. There then follows in the order the following provisions:

"Now, therefore: It is ordered, As follows:

"(1) All unexpired export licenses issued to Minos K. Zongos or respondent Superior Packing Company are hereby revoked and shall be returned at once to the Office of International Trade for cancellation.

"(2) Minos K. Zongos and respondent Superior Packing Company are hereby denied the privilege of obtaining or using or participating directly or indirectly in the obtaining or using of export licenses, including general licenses, for a period of one year from the date of this order.

"(3) Such denial of export license privileges shall extend not only to said Minos K. Zongos and said respondent Superior Packing Company but also to any firm, corporation or other business organization in which either of said parties shall have a controlling interest or with which said Minos K. Zongos shall hold a position of responsibility."

It may be fruitful to review the legislative background of the Act of 1940 as amended to date. It is set forth in the report of the Senate Committee on Banking and Currency, which accompanied the Senate Bill, S. 548, which subsequently was enacted on February 26, 1949.

Section 6 of the Act of July 2, 1940, 54 Stat. 714, 50 U.S.C.A.Appendix, § 701, authorized the President to prohibit or curtail the export of military equipment, etc. and imposed penalties for violations. The Act was amended in 1941, 55 Stat. 206, 50 U.S.C.A.Appendix, § 702. Again the Act of June 30, 1942 amended the Export Control Act of 1940, broadening the powers to cover "any articles, technical data, materials, or supplies". That Act provided an expiration date of June 30, 1944. The section was extended to June 30, 1945 by the Act of July 1, 1944, and then to June 30, 1946 by the Act of June 30, 1945, to June 30, 1947 by the Act of May 23, 1946, and it was extended by the joint resolution of June 30, 1947 to July 15, 1947.

Section 4 of the Second De-control Act of 1947, P.L. 188, 80th Congress, 61 Stat. 321, extended the powers to February 29, 1948; and Sec. 3 of the Joint Resolution of December 30, 1947, P.L. 395, 80th Congress, 61 Stat. 946, extended these powers to February 28, 1949; and the Act of February 26, 1949, C. 11, 63 Stat. 7, U.S.C.A. Title 50 Appendix, §§ 2021–2032, extended the termination date to June 30, 1951, or upon any prior date which the Congress by concurrent resolution, or the President may designate.

It is thus clear that the basic matter to be decided in this information is whether the suspension order remained in full force and effect for the period of one year from December 2, 1948, the date of its issuance. At the time that the order was entered, the latest amendment of the Export Control Act extended termination only to February 28, 1949. Did the fact that the suspension order barred the respondent to December 2, 1949, beyond that expiration date of February 28, 1949, free the respondent from the terms of the suspension order on February 28,

1949? It would seem that the complete answer is given when one considers that before February 28, 1949 the termination date under the Export Control Act had been extended by the Act of February 26, 1949 to June 30, 1951. The critical language indeed, which justifies the inference that the suspension order continued in full force and effect, is found in Sec. 11 of the Act of February 26, 1949, 50 U.S.C.A.Appendix, § 2031 which reads in part: "This Act shall take effect February 28, 1949, upon the expiration of * * * the Act of July 2, 1940 * *. * as amended * * *. *All outstanding delegations, rules, regulations, orders, licenses, or other forms of administrative action under said section 6 of the Act of July 2, 1940 * * * shall, until amended or revoked, remain in full force and effect, the same as if promulgated under this Act * * *."*[1]

The defendant's contention that the order of December 2, 1948, which by its terms was to be effective for one year, was void because the statute under which it was issued was to terminate on February 28, 1949, is without merit. The Government argues, and with force and validity, that the suspension order was neither void in its inception nor thereafter. Sec. 11 of the Export Control Act of February 26, 1949, 63 Stat. 7, 50 U.S.C.A.Appendix, § 2031, was effective as against all outstanding administrative orders. Defendant cites Biddle v. Thiele, 8 Cir., 11 F.2d 235, 236, which is not in point. That case had to do with sentences imposed upon a defendant for "a third or subsequent offense" under a statute imposing progressively severer sentences upon a first, a second and a third or subsequent offense. It was held that the indictments involved charged only a second offense within the meaning of the statute, and so the sentences were excessive. It was further held that there being no way to separate the excessive portion from the valid portion of the sentences, they were void. Cases such as Bowles v. Loveman, 4 Cir., 147 F.2d 645, and Di Melia v. Bowles, 1 Cir., 148 F.2d 725 certiorari denied 325 U.S. 886, 65 S.Ct. 1581, 89 L.Ed. 2000, cited by the

1. Italics mine.

Government, are in point. In the Loveman case, the question considered was whether an order of the Administrator of the Office of Price Administration suspending the defendant from dealing in rationed shoes for the duration of rationing, was a legal and valid order. It was held in effect that the Administrator could make a valid suspension order co-terminous with the period of rationing, "as that period may be extended from time to time by act of Congress". [147 F.2d 646.] In the De Melia case a similar question was presented in respect to the validity of a termination period, and the First Circuit quoted Judge Parker, in the case of Bowles v. Loveman, supra, as follows:

"It is said that the period of exclusion is this left uncertain, vague and indefinite, and that the order is void for that reason. We do not think so. It definitely excludes for the period of rationing; and the case is one for the application of the maxim, id certum est quod certum reddi potest  *  *.

"If rationing is to continue, as it unquestionably should, so long as the need for it exists, there can be no justification for limiting the power of the Administrator so as to preclude his discharging his duties effectively; and, if he is to discharge them effectively, he should have the power to suspend for the period of rationing those dealers in rationed commodities whose activities are a menace to rationing."

■■ There is no denial, of course, that the respondent filed shipper's export declarations covering the three shipments in question. His contention is that the shipments were gifts. Nevertheless so far as the violation of the order is concerned it is immaterial whether the shipments be regarded as gifts or as merchandise exported for sale; and so far as guilty knowledge and intent are concerned, such knowledge and intent are clearly established by the evidence in the case. Zongos knew, as appears from the proceeding before the Office of International Trade, based on the Bureau's charge of October 5, 1948, that he was barred from making such shipments, indeed any export shipment. He had consented that he and his company be denied the right to obtain or use export licenses, including general licenses, for a period of one year.

■ Generally it must be observed that the export regulations were promulgated to maintain a proper flow of exports in accordance with existing statutory policies. And so indeed the whole history of the Export Control Act, from its inception in 1940 and as amended, carried in effect a continuity in respect to its effective date of termination. It must be concluded, therefore, that the suspension order charged to be violated in the three counts of the information was not only valid in its inception, but continued so for the entire period embraced in the suspension.

It is for that reason that the defendant must be held guilty under the three counts.

Findings of fact were made part of the record at the session of the court held on February 20, 1950.